257 So.2d 174 (1972)
Mr. Thomas A. WILLIAMS, d/b/a Williams' Physicians & Surgeons Supplies, Plaintiff-Appellee,
v.
Mr. Sidney F. O'BRYAN d/b/a Natchitoches Geriatrics Hospital, Defendant-Appellant.
No. 3721.
Court of Appeal of Louisiana, Third Circuit.
January 21, 1972.
Robinson & McKneely by Roland V. McKneely, Jr., Bossier City, for defendant-appellant.
James U. Downs, of Jones, Jones & Key, Franklin, N. C., Nolan Harper, Shreveport, and Gahagan & Kelly by Donald G. Kelly, Natchitoches, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
FRUGE, Judge.
This is a suit on an open account. On July 16, 1970, the plaintiff filed his petition claiming $1,294.17. The amount in question is of no concern to this court. The only issue contained herein is the possible liability of Mr. O'Bryan, the defendant. He asserts as a defense that he was acting for *175 and representing Hand-Enis Realty Company, a corporation domiciled in Louisiana. We are, therefore, concerned solely with the area of law involving mandate.
The trial court found the defendant personally liable and granted judgment therefore in favor of the plaintiff. We agree.
As stated by the plaintiff, the general law concerning the liability of an agent indicates that unless the agent discloses his principal and therefore, his agency relationship, he becomes personally liable on the debt he incurs in behalf of his principal. McKay v. Vesley, 163 So.2d 121 (La. App. 3rd Cir., 1964); Giglio v. Lunsford, 165 So.2d 60 (La.App. 2nd Cir., 1964); Foshee v. Hand-Enis Realty Co., 237 So.2d 437 (La.App. 3rd Cir., 1970); LaBella Insulation, Inc. v. Connolly, 182 So.2d 117 (La.App. 4th Cir., 1966).
In order to prove that the defendant did not disclose his agency position nor that the plaintiff knew of such position, the appellee has referred to the testimony of several witnesses. Mr. Hal Anderson worked for Williams approximately nine and a half years as a purchasing agent and office manager. He stated that Mr. O'Bryan came to their Shreveport office in May of 1967, and stated that he had bought Natchitoches Geriatrics Hospital. One Mr. Whiteside, who worked with Williams from 1959 to 1968 as a salesman, testified substantially the same. He stated that when he called on Mr. O'Bryan from March of 1967 to June of 1968, he was told by the defendant in conversation concerning the purchase orders, that the ownership of the hospital in question was vested in the defendant. Mr. Whiteside has stated that he recognized O'Bryan as the owner.
Mr. Marvin Jackson, the health insurance licensing and certification supervisor for the State Department of Hospitals, also testified. He disclosed that from March 30, 1967, to February 18, 1970, the Natchitoches Geriatrics Hospital was licensed in the name of Mr. Sidney O'Bryan. It must be noted that Mr. Jackson also stated that the law of this state prior to 1970 dictated that the administrator of a hospital was to apply for the license. This fact, then, would tend to destroy the possible significance of Mr. O'Bryan being named as the license holder of the hospital in Natchitoches, since he was employed at that time as administrator for the hospital. However, Mr. Jackson referred to a letter sent to a Mr. Jack Letcher from the defendant O'Bryan stating that O'Bryan was the owner of the hospital. This letter was dated March 1, 1967. We find this interesting and noted, therefore, only to show Mr. O'Bryan's possible frame of mind and varied disclosures during the time period with which we are concerned. The defendant O'Bryan himself testified and stated that he bought the majority of the outstanding stock in Hand-Enis Realty Company on February 21, 1967. He stated, however, that nothing was recorded except his presidency and the officers of the corporation, as well as amendments to the articles of incorporation. Mr. O'Bryan testified that he never disclosed his agency relationship, nor the principal he was reportedly representing. His stock was sold to Mr. Gamble on October 27, 1969, at which time Mr. O'Bryan remained employed by Mr. Gamble until the end of November, 1969. The testimony of these witnesses would seem to indicate to us that the defendant did not disclose his agency relationship, nor did he disclose his principal.
The defendant, O'Bryan, however, relies on an exception to the abovementioned rule. He cites Article 3013 of the Civil Code, as well as Three Rivers Hardwood Lumber Co. v. Gibson, 181 So. 607 (La.App. 2nd Cir., 1938), and Bush v. Saucier, 197 So.2d 907 (La.App. 1st Cir., 1967). The above jurisprudence indicates that the plaintiff's knowledge of the agency will release the agent from personal liability. Defendant claims that this knowledge on the part of the plaintiff was acquired through a lease agreement signed by Mr. O'Bryan as president of Hand-Enis Realty Company, doing business as Natchitoches Geriatrics Hospital, at which time the corporation *176 leased certain equipment from the New York domiciled Equilease Corporation, which materials were supplied by Williams. Although Mr. Williams did not sign the actual lease agreement between Equilease and Hand-Enis, he did sign a recourse agreement whereby he would become responsible for the possible default by Hand-Enis Realty Company. It should be noted, however, that this recourse agreement was signed by Mr. Williams several months subsequent to his supplying the materials taken by Mr. O'Bryan for the hospital. Defendant states that Mr. Williams' involvement in these negotiations and his firm's contract therewith should have given him reasonable notice, if it did not actually impart the knowledge, that the hospital in question was owned by the corporation Hand-Enis rather than Mr. O'Bryan himself. With this we cannot agree.
Mr. Williams testified that Mr. O'Bryan and his wife came to his Shreveport office one day for the purpose of buying some equipment. After specifying which merchandise was desired, the plaintiff inquired as to how Mr. O'Bryan wanted to handle the payment. Mr. Williams states that Mr. O'Bryan indicated that he wanted to pay cash. The papers were subsequently drawn up and not until six months later was Mr. Williams informed that Mr. O'Bryan wanted to lease the equipment. As per his frequent policy, Mr. Williams sent the details to Equilease Corporation who would pay for the merchandise and lease it to Mr. O'Bryan. The only requirement Equilease had at this time was to require Mr. Williams to sign a recourse agreement whereby any default on the part of Mr. O'Bryan would be made good by Williams. This recourse agreement was thereafter signed by Williams. It should be noted, however, that even if this recourse agreement had given Mr. Williams knowledge of the agency relationship, which we cannot readily concede, this knowledge was imparted about one year after Mr. O'Bryan's entering his open account with Williams. After reading the record, we think that Mr. Williams' actual knowledge of the agency relationship herein involved was obtained subsequent to February 1, 1970, at which time Hand-Enis defaulted in rent payment to Equilease Corporation. After this default, Equilease assigned their right against Hand-Enis in exchange for payment of the amount due, as per Mr. Williams' agreement of recourse. That assignment and subsequent litigation was approximately three years after Mr. O'Bryan's open account was established with Williams.
Our finding, we believe, is re-enforced by the Three Rivers Hardwood Company case, supra, in which Judge Hamiter quoted 3 C.J.S., Agency, § 216, as follows:
". . . If the fact of his agency is known and there is a mutual intention that the principal and not the agent is to be bound, the latter is not liable, although the identity of the principal is undisclosed, but generally, unless there is an agreement or mutual intention of the parties to the contract that the agent should not be bound, an agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable, even though the other party knows that he is acting as agent. Where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge through some other source, but actual knowledge is necessary, and it is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal. . ."
For the foregoing reasons, judgment of the trial court is affirmed. Costs to be borne by the defendant-appellant.
Affirmed.