430 So.2d 207 (1983)
DUCKWORTH-WOODS TIRE SERVICE, INC.
v.
SMITH & JOHNSON (SHIPPING), INC.
No. CA-0209.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*208 Deutsch, Kerrigan & Stiles, Ralph E. Smith, New Orleans, for defendant-appellant.
Roger J. Larue, Jr., Metairie, for plaintiff-appellee.
Before GULOTTA, BARRY and LOBRANO, JJ.
GULOTTA, Judge.
Smith & Johnson Shipping, Inc., appeals from a $9,860.40 judgment on an open account, contending it did not contract with plaintiff, or, alternatively, was merely an agent for a separate, disclosed principal and is not personally liable for the debt. We disagree. Accordingly, we affirm.
The judgment covers unpaid invoices for tires and services sold by plaintiff on open account from August, 1980 to January, 1981. The statement of account is titled "Smith & Johnson Ship IC" and invoices indicate "Smith & Johnson, 5900 Jordan Road", the address listed in the 1980 telephone directory for Smith & Johnson Shipping, Inc.
Smith & Johnson Shipping, Inc., a New York corporation formed during the 1940's, is a steamship agency originating from the "Smith & Johnson" partnership established in 1924. The company maintained its New Orleans office in the First National Bank of Commerce Building until October, 1979, when it transferred all its assets and liabilities to a newly formed corporation, Smith & Johnson Gulf, Inc., and obtained 50% of the stock in the new company. Both companies were agents for a third entity, Armasal Transmarine Shipping Corporation (Armasal), which had its office at 509 Julia Street, New Orleans, the same address as Smith & Johnson Gulf, Inc. During 1980, plaintiff received various checks drawn by Armasal in payment of purchases made on the open account. Both Smith & Johnson Gulf, Inc., and Armasal have filed petitions in bankruptcy.
Plaintiff's president, Emmet Woods, testified that he was contacted by a representative of Smith & Johnson Shipping, Inc. in the summer of 1979 and agreed in the defendant's office to open an account in the name of Smith & Johnson Shipping, Inc. It is noteworthy that the account was opened *209 prior to the formation of the new corporation, Smith & Johnson Gulf, Inc., and both Woods and his sales representative testified they had not heard of the newly formed corporation until the inception of the suit, had no idea that any of the merchandise and services sold were to be used by Armasal, and did not know of any relationship among the three entities. Plaintiff was never informed that its billing procedure naming Smith & Johnson Shipping, Inc. as purchaser was incorrect.
Woods testified further he had understood that Smith & Johnson Shipping, Inc.'s primary business was as a shipping company requiring new tires, tubes and retreaded tires for its shipping containers and trailers. He had no contact with Armasal and was unaware of its relationship to Smith & Johnson Shipping, Inc. Plaintiff's sales representative likewise testified that he had thought he was dealing with Smith & Johnson Shipping, Inc. and that no one had informed him he was selling goods and services to Smith & Johnson Gulf, Inc. or Armasal.
On the other hand, Janis Smith, the secretary-treasurer of Smith & Johnson Gulf, Inc., stated that plaintiff's goods and services were delivered to Armasal's shipping terminal for use on containers leased or owned by Armasal. According to this witness, the invoices addressed to Smith & Johnson Shipping, Inc. at 509 Julia Street were received by Smith & Johnson Gulf, Inc. as agent for Armasal and represented Armasal's indebtedness. Smith testified further that plaintiff "knew who they were dealing with" and that plaintiff's representative had been directed to Armasal for payment of overdue invoices in August, 1980.
This witness did not know, however, if Smith & Johnson Shipping, Inc.'s creditors had been notified when Smith & Johnson Gulf, Inc. "took over" the prior company's accounts. Similarly, a former Armasal employee testified he did not know if anyone had ever informed plaintiff that the billing to Smith & Johnson Shipping, Inc. was incorrect. Significantly, a photograph in evidence indicates the 509 Julia Street building housing the offices of Armasal and Smith & Johnson Gulf, Inc. only bears the sign "Smith & Johnson, est. 1924" over the door.
Robert B. Johnson, president of Smith & Johnson Shipping, Inc. testified that his company was domiciled in New York City and opened an office in New Orleans prior to World War II, which operated until September 19, 1979 when Smith & Johnson Gulf was formed. All of the assets and liabilities of Smith & Johnson Shipping (New Orleans) were transferred to Gulf, which was no longer under the full control of Shipping. According to Johnson, the principal accounts of Gulf were no different from the principal accounts of Shipping and there was no difference in the operation other than the change in name on October 1, 1979. Johnson testified that one company phased-in and the other phased-out.
It is well settled that a creditor suing on an open account bears the burden of proving the defendant-debtor contracted for the sales on open account. Livestock Producers Ass'n v. Colomb, 413 So.2d 522 (La.App. 4th Cir.1982); Frank Brigsten, Inc. v. Alpha Builders, Inc., 351 So.2d 777 (La.App. 4th Cir.1977); Ville Platte Concrete v. Western Cas. & Sur., 377 So.2d 532 (La.App. 3rd Cir.1979).
Also well settled is the rule that an agent has the duty to disclose his capacity if he is to escape personal liability for his acts, and bears the burden of proving such disclosure and the identity of the principal. LSA-C.C. Art. 3012 and 3013; Regency Elec., Inc. v. Verges, 360 So.2d 252 (La.App. 4th Cir.1978); Centanni v. A.K. Roy, Inc., 258 So.2d 219 (La.App. 4th Cir.1972); Pat's Furniture v. Furniture Warehouse, Etc., 392 So.2d 145 (La.App. 1st Cir.1980), application not considered 397 So.2d 803 (La. 1981); J.T. Doiron, Inc. v. Lundin, 385 So.2d 450 (La.App. 1st Cir.1980). However, express notice of the agent's status and the principal's identity is unnecessary, if acts and circumstances surrounding the transaction, combined with general knowledge that persons in that type of business are usually acting as agents, demonstrate affirmatively that the third person should be charged *210 with notice of the relationship. J.T. Doiron, Inc. v. Lundin, supra; Prevost v. Gomez, 251 So.2d 470 (La.App. 1st Cir.1971); Williams v. O'Bryan, 257 So.2d 174 (La.App. 3rd Cir.1972).
The circumstances in the instant case considered, we cannot conclude that plaintiff can be charged with knowledge of the corporate change.
In a recent decision in Hight Enterprises, Inc. v. Smith & Johnson (Shipping), Inc. and Smith & Johnson (Gulf), Inc., 421 So.2d 267 (La.App. 4th Cir.1982), writ denied 427 So.2d 1206 (La.1983), we concluded that the plaintiff was not entitled to recovery against Smith & Johnson Shipping for the balance on a dredge contract because there was no evidence that plaintiff had dealt with, believed it was dealing with, or relied on the corporate name or credit of Smith & Johnson Shipping, Inc. In Hight, the arrangements for the dredging contract were entered into in March, 1980, subsequent to the October 1, 1979 phase-out of Shipping. In our case, arrangements were made for the open account in the name of Smith & Johnson Shipping, Inc. in the summer of 1979, prior to the October 1, 1979 transition. Our decision in Hight is clearly distinguishable from the instant case.
Under the circumstances, we cannot say the trial judge erred in casting Smith & Johnson Shipping, Inc. in judgment. We are led to conclude, as the trial judge clearly did, that the circumstances surrounding the initial agreement between plaintiff and Smith & Johnson Shipping, Inc. together with the billing on the open account compelled a disclosure by defendant of the change in corporate status and a change in purchase arrangements. Defendant failed to make disclosure, and is therefore liable for the amount owed on the open account. Accordingly, the judgment is affirmed.
AFFIRMED.