KLEES, Judge.
This suit was filed by Waguespack-Pratt, Inc. to recover commissions they alleged were due under a brokerage contract with Ten-O-One Howard Avenue and Associates (Ten-O-One). Also made defendants were Moey Segal, Eddie Cohen and Arthur Tolar as individuals. The trial court rendered a partial judgment on the pleadings in favor of the plaintiff in the amount of $43,643.52, which was the amount the defendants admitted they were liable for. After trial on the merits, the trial court rendered judgment in favor of the plaintiff for an amount representing an 8% real estate commission based on a ten year contract of lease between MCI Telecommunications Corp. and Ten-O-One. It is from this judgment that the defendants appeal.
The issues on appeal are:
1. was it was error for the trial court to sustain plaintiff counsel’s objection to the admission of industry custom evidence for the purpose of interpreting the contract, and
2. did the trial court err in finding that Ten-O-One and MCI entered into a “ten-year lease”,
3. did the trial court err in finding Arthur Tolar, agent for Ten-O-One individu *659 ally liable for the partnership debts of his employer.
We affirm the judgment of the trial court with respect to its finding that the plaintiff is entitled to an 8% commission based on a ten-year lease period but reverse with respect to its finding that Arthur Tolar is individually liable.
FACTS:
The evidence presented at trial was that Arthur Tolar, acting on behalf of his employer Ten-O-One, telephoned Waguespack-Pratt on March 9, 1982 regarding possible tenants for available space in their building. Tolar spoke to Hernandez who referred the matter to Hassinger, a commercial real estate broker. Hassinger testified that he called Tolar shortly thereafter to discuss the details. He said that Wagues-pack-Pratt always made commission arrangements before bringing in a prospective tenant. During their talk, Tolar said that they would pay a 10% commission, or an 8% commission for a full floor tenant. Hassinger said that he specifically asked whether they would pay that even for a lease of ten years or longer. He testified that Tolar said yes. Tolar, in addition, told him that the price range they were asking would be $11 to $14 per square foot per year and that figure included an 8% commission on a ten year or longer lease. To-lar, in a deposition introduced into the record, said that he probably did tell Has-singer that they were paying an 8% commission for full floor tenants.
The very next day, March 10, Hassinger introduced Tolar to a representative of MCI Telecommunications Corp. interested in obtaining leasing space in New Orleans. Warfel, MCI’s representative, told Tolar that MCI required a minimum lease term of ten years.
On March 11, Hassinger hand delivered to Ten-O-One a letter confirming their commission agreement. That letter said in pertinent part,
“It is my understanding that, if MCI Telecommunications Corp. leases space [within six months] in the subject property, you will pay us a commission of 8% of the gross rental (excluding CPI or similar increases) over the term of the lease, payable in full upon [move in]. If this correctly states our agreement, please sign and return the copy of this letter to me in the enclosed envelope.” (brackets indicate additions).
Segal added the six month provision and payable upon move in. He crossed out the portion of the sentence calling for payment in full upon signing of the lease, and a similar commission on any extensions or renewals. Segal then signed and returned the letter.
Negotiations on the lease were subsequently entered into and it was the understanding of Waguespack Pratt and the desire of MCI that there be at least a ten year term with additional options totalling twenty years.
Hassinger, Warfel, Cohen, Segal and To-lar met on April 7 to discuss the terms of the lease. Warfel again requested a ten year lease with two-five year options. Has-singer testified that after the meeting ended he was asked to remain for further discussions. According to Hassinger, he was told by Cohen and Segal that they would have difficulty putting the deal together if they had to pay the agreed upon commission. Hassinger said that Wagues-pack-Pratt would be willing to limit their participation to ten years. He was told that Ten-O-One needed to make $14.65 per square foot per year and Waguespack-Pratt’s commission would have to be added on top of that. Hassinger said if they needed to revise their quote to MCI he would present it to them.
There was some attempt thereafter to get together on a revised figure, but any subsequent negotiations were between MCI and Ten-O-One with no participation by Waguespack-Pratt, though MCI did keep them informed of events.
A lease was finalized between the parties in July, giving MCI an initial lease term of three years, with a two year option, a five year option, then two additional five year options totalling twenty years. The rental *660 price per square foot per year was $15.00. MCI notified Waguespack-Pratt that the lease had been signed at which time Wag-uespack-Pratt requested of Tolar that their commission be paid. Waguespack-Pratt was provided with a copy of the lease and submitted its bill to Ten-O-One. Ten-O-One attempted to tender an amount representing an 8% commission on a three year lease term. This was refused by Waguespack-Pratt, precipitating this suit.
The first issue presented concerns the trial court’s sustaining of plaintiffs counsel’s objection to the admission of industry custom in interpreting the contract. Our jurisprudence has interpreted LSA C.C. Article 2276[1] to provide an exception to the inadmissibility of parol evidence.
The Court in Gautreau v. Modern Finance Gonzales Inc., 357 So.2d 871, 872 (La.App. 1st Cir.1978) said:
"It has keen held that, as between parties to an instrument, parole evidence is admissible and competent to show fraud, mistake, illegality, want or failure of consideration, to explain an existing ambiguity when the explanation sought to be offered is not inconsistent with its written terms, or to show that the instrument is but a part of the entire oral contract between the parties. Citing Gulf States Finance Corporation v. Airline Motors Auto Sales, Inc., 248 La. 591, 181 So.2d 36 (1965); Goldsmith v. Parsons, 182 La. 122, 161 So. 175 (1935).”
Hassinger, Rock, and Warfel all testified to the negotiations and events which took place between the parties. The plaintiff alleged fraud in its petition and because of that was allowed to introduce parole evidence concerning those allegations. The defendants had an opportunity to refute the testimony and evidence presented by the plaintiff and could not do so. Evidence of industry custom would not have refuted that presented by the plaintiff. The plaintiff was attempting to prove the agreement as it existed between the parties; not, that what they agreed to was common in their industry or even common in their practice.
The trial court found that the defendants failed to preponderate that they did not agree to an 8% commission on a ten year lease. The fact in contest was whether the defendants agreed to the commission and term, not whether they would have agreed once they knew the broker's client. Under these circumstances we cannot say that the trial court was clearly wrong in refusing to allow evidence of industry custom to refute the plaintiff’s evidence.
The second issue is whether the trial court erred in finding that what Ten-O-One and MCI entered into was a 10 year lease for purposes of the commission agreement. The record shows that Has-singer introduced the MCI representative to Tolar based upon Tolar’s representation that they would be willing to give a minimum lease term of ten years. Rock told Hassinger that MCI’s standard requirement was a ten year lease, with two-five year options. Hassinger testified that Warfel told Tolar on March 10 that they needed a minimum lease term of ten years. MCI would not contract for less because the capital investment, which it had to put into each of its operations locations, made it economically unfeasible to move out in less than ten years. Tolar, Cohen, and Segal all testified that they did not want a ten year lease, did not sign ten year leases, and never intended a ten year lease. The defendants did not tell Hassinger of any problem with a ten year lease until their meeting of April 7. They did not tell War-fel at that meeting that they would not consider a ten year lease. The trial judge found the testimony of the defendants totally unbelievable in their contentions that they never intended to sign a ten year lease and that they always intended to pay the • plaintiff no more than $40,000.00 in commission.
*661 “Nothing in Article 2276 permits proof of additional contract terms agreed on prior to or contemporaneous with the written contract. However, the Supreme Court does allow parties to show that the written instrument is not complete in itself.” Recherche, Inc. v. Jewelry Jungle, Inc., 377 So.2d 1329, 1332 (La.App. 1st Cir. 1979), writ denied, 379 So.2d 254 (La. 1980)
In Recherche, Inc., the plaintiff sued the defendant for a bad faith breach of its contract to promote the plaintiff’s bead sale concept, and also alleged fraud. The contract between the parties was a letter which the defendant urged was the entire contract. The court upon reviewing the letter found major relevant parts missing:
“1. The letter states that Recherche ‘will undertake to initially stock four of your outlets’, but no mention is made of other outlets or what is to occur subsequent to the initial stocking.
2. Nothing is said about possible competition or its preclusion between Recherche and Jewelry Jungle.
3. Nothing is said about the duration of the contract.” Recherche, Inc., supra, at 1331.
The court found that the contract was not complete on its face and therefore parol evidence was admissible to establish all the contract terms.
In this matter the plaintiff did not attempt to vary or contradict the terms of the agreement, but attempted to show that it did not manifest what was mutually assented to by the parties on March 11, which was that Waguespack-Pratt had a client who needed a ten year minimum lease. They were willing to introduce this client to Ten-O-One if Ten-O-One would be willing to give a ten year lease, and pay an 8% commission on a lease of at least ten years or longer. The letter was silent as to the lease term because the parties had not yet agreed to what both MCI and Waguespack-Pratt understood would be a ten year or longer term.
MCI was not told until after the April 7 meeting that they would not be able to get a ten year initial term. Rock was told by the defendants that it would have to be structured as a three year lease in order to minimize Waguespack-Pratt’s commission. Both Rock and Warfel said that they were told that if they didn’t sign the lease as it was structured they would not be able to lease from Ten-O-One. For MCI that meant delaying locating a facility in New Orleans for months.
The lease as structured does give MCI the protection of a ten year lease. In fact the defendants were willing to assume the burden of notifying their lessee of the time for exercising their first two year and subsequent five year options.
LSA-C.C. art. 1901 says:
Agreements legally entered into have the effect of laws on those who have formed them.
They cannot be revoked, unless by mutual consent of the parties or for causes acknowledged by law.
They must be performed with good faith.
There was no revocation, abrogation, or modification of the commission agreed upon by the mutual consent of the parties and there can be found elements of bad faith on the part of the defendants.
“Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Article 1903 of the Code in these words: ‘The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom is considered as incidental to the particular contract, or necessary to carry it into effect.’ The effect of equity on implied obligations is expressed in Article 1964 in these terms’ ‘Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.’ Insofar as pertinent here, the ‘equity intended by this rule is founded in the Christian principle not to do unto *662 others that which we would not wish others should do unto us.’
From these pronouncements we are reminded that not all obligations arising out of contract need be explicitly stated. Into all contracts, therefore, good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And, as Article 1964 of the Civil Code makes clear, equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source.” National Safe Corp. v. Benedict and Myrick, Inc., 371 So.2d 792, 795 (La.1979).
It is reasonable to assume that had Wag-uespack-Pratt known on March 9 that Ten-O-One would at no point be willing to give a minimum ten year lease, Waguespack-Pratt would not have introduced Ten-O-One to a client who required a minimum ten year lease. We conclude as did the trial court that the initial contact between the parties and subsequent negotiations were premised on the understanding that there would be a minimum ten year lease term. We agree with the trial court’s finding that it was the mutual intention of the parties to enter a ten year lease at the time Wagues-pack-Pratt introduced MCI to Ten-O-One and to pay an 8% commission based on that lease term.
The third issue presented is that the trial court erred in finding Arthur Tolar individually liable in this suit. Tolar was the agent and employee of Ten-O-One and our reading of the record shows that there are no allegations or evidence that he represented himself as anything else. Both plaintiff’s petition and defendant’s answer aver that Tolar was at all times acting within the course and scope of his employment.
It is well settled that:
“An agent who discloses the identity of his principal can not be held to have acted individually so as to be personally liable for the acts of his principal.” Roran Corp. v. Carron, 345 So.2d 1239, 1246 (La.App. 1st Cir.1977, citing Williams v. O’Bryan, 257 So.2d 174 (La. App. 3rd Cir.1972).
Accordingly, for the reasons stated above, we affirm the judgment of the trial court, in favor of Waguespack-Pratt, Inc. and against defendants Ten-O-One Howard Avenue Associates, Eddie Cohen, individually and Moey Segal, Individually; we reverse that part of the judgment finding personal liability on the part of Arthur Tolar. All costs to be borne by appellants.
AFFIRMED IN PART.
REVERSED IN PART.

. Art. 2276. Parole evidence relative to written instruments
Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.