940 So.2d 6 (2006)
S.Z.S. CONSULTANTS, INC.
v.
Jim HOWARD and Lifetown Homes, Inc.
No. 2005-CA-1507.
Court of Appeal of Louisiana, Fourth Circuit.
August 16, 2006.
*7 Dan A. Smetherman, New Orleans, LA, for Plaintiff/Appellee.
*8 Roderick Christopher Patrick, Patrick & Associates, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY, Judge LEON A. CANNIZZARO JR.).
DAVID S. GORBATY, Judge.
In this appeal, Jim Howard ("Howard") and Lifetime Homes, Inc. ("Lifetime") contend that the trial court erred in rendering judgment in favor of SZS Consultants, Inc. ("SZS") in the amount of $29,190.11 with attorneys' fees of $11,275.00, plus costs and interest. For the reasons set forth below, we affirm.

FACTS AND PROCEDURAL HISTORY
From January 1, 1996 through October 25, 2001, SZS performed surveying, engineering and other services for Lifetime. The parties' arrangement was pursuant to an oral agreement on an open account basis. No written agreement ever existed. The majority of the work performed by SZS in this matter was for the design and development of two (2) subdivisions in Eastern New Orleans, namely Morrison Oaks and Villa Del Ray. These subdivisions were to be built on land owned by Panama Jax, Inc., a corporation owned by Howard and his immediate family.
For its work, SZS forwarded bills to the defendants in a total amount of $55,310.11. Lifetime and Howard paid SZS $ 21,920.00, either by Lifetime's check or in cash from Howard. Lifetime and Howard further directly paid Mr. Leo Hastman, an independent contractor engaged by SZS for these projects, an amount of $4,200.00. The total amounts paid therefore were $26,120.00.
Neither the amount billed nor the amount paid was contested by Lifetime/ Howard until after suit was filed. The amounts received by SZS and Hastman were applied to the outstanding balance owed by Lifetime. Copies of all statements forwarded to Lifetime were introduced at trial, as was a recap of Lifetime's account. Howard admitted that the money was owed in a letter signed by him on March 1, 2001. This admission is very significant, and undercuts Howard's entire defense.
When the Lifetime account became significantly in arrears, Sam Scandaliato of SZS met with Howard. Scandaliato testified that at that time, Howard paid $1,000.00 and agreed to pay $25,000.00 on the account within one week. The $25,000.00 was never paid. On February 15, 2002, SZS's attorney forwarded a demand letter via certified mail to Howard individually and as agent for service of process for Lifetime. This letter was returned as unclaimed. An identical, contemporaneous letter was sent via first class mail to Howard and Lifetime. This letter was certified by the U.S. Post Office as being mailed. No response was received.
On March 27, 2002, SZS filed suit for the unpaid balance of the open account. Lifetime and Howard filed an exception of prescription, which was granted by the trial court. After the trial on the exception of prescription, Lifetime and Howard filed a reconventional demand against SZS and filed a third party demand against Sam Scandaliato. After a bench trial, the court rendered judgment in favor of SZS in the amount of $29,190.11 with attorneys' fees of $11,275.00, plus costs and interest. Lifetime and Howard filed a Motion for New Trial, which was denied. This appeal followed.
DISCUSSION
In their first assignment of error, Lifetime and Howard assert that the trial court erred in finding that Jim Howard *9 was personally liable absent any evidence relating to piercing the corporate veil.
At trial, Howard testified that the land upon which the two subdivisions were located was owned by Panama Jax. There was no written agreement between Panama Jax and Lifetime. When pressed for the existence of a contract, Howard stated that it was not necessary to have a contract because he was on the board of both. It should also be noted that Mr. and Mrs. Howard and their daughter owned both corporations.
Further, the evidence showed that SZS performed other services before and after the work done for the Morrison Oaks and Villa Del Rey subdivisions for Howard and his family. Scandaliato testified that about one-third of the payments made by Howard were in cash, with the rest being made by check. During this entire period, Howard did not disclose that he was working on behalf of any particular corporation as all invoices and payments were between SZS and Howard/Lifetime.
To avoid personal liability to a third person, an agent has the burden of proving he contracted not individually but as an agent, disclosing his capacity and his principal's identity to the other party. La. C.C. art. 3012 and 3013; Duckworth-Woods Tire Service, Inc. v. Smith & Johnson (Shipping), Inc., 430 So.2d 207 (La. App. 4 Cir.1983). Well-settled is the rule that one who claims he is acting in a corporate capacity has the duty to disclose that he is contracting as an agent of the corporation and not as an individual. In such cases, the burden of proof is placed on one claiming the agent relationship. Pat's Furniture v. Furniture Warehouse, etc., 392 So.2d 145 (La.App. 4th Cir.1980).
The trial court found that "[c]learly, the only individual involved in this action is Jim Howard. Lifetime and Panama Jax, Inc. are his alter egos as Mr. Howard did not and does not maintain the identities of his corporation separate from him . . ." We agree. The evidence adduced at trial clearly demonstrated the nebulous relationship existing between Howard and his family-owned corporations. Additionally, despite his broad experience, neither he nor any of his corporations entered into a written agreement with SZS establishing the fact that he was acting on behalf of a particular corporation. There is no merit to this assignment of error.
Next, Lifetime and Howard argue that the trial judge erred in failing to give defendants credit for the $10,607.50, which it earlier held had prescribed.
When the defendants filed their exception of prescription, they pled the three-year prescriptive period applicable to an open account. The plaintiff in an action on an open account bears the burden of proving his cases by a preponderance of the evidence. Texas Industries, Inc. v. Roach, 426 So.2d 315 (La.App. 2 Cir.1983). Once a prima facie case has been established by a plaintiff-creditor in a suit on an open account, the burden shifts to the debtor to disprove the existence or correctness of the account. Cardinal Wholesale v. Rainbow Floor Covering, 432 So.2d 419 (La.App. 1 Cir.1983).
In the instant case, appellants never made payments for a specific activity. Howard made his serial payments in round amounts, which were applied by SZS to the earliest amounts due on the account. The trial court considered the credit moot, as the evidence adduced at trial clearly demonstrated that payments received from Howard during the course of the projects were applied by SZS to the earliest amounts due. We find that this argument also lacks merit.
*10 In their third assignment of error, Lifetime and Howard argue that the trial judge erred in admitting plaintiff's exhibits one, two, three, four and five.
Copies of SZS's bench book containing these exhibits were allowed by the trial judge through the testimony of Mr. Scandaliato on redirect examination. A copy of the bench book was provided to the court at the commencement of trial; a copy had been provided to Lifetime and Howard's counsel at a prior hearing. The evidence in the bench book was prepared by counsel for SZS with the assistance of Mr. Scandaliato and his staff. Scandaliato attested to this evidence in establishing the case for the appellee. In light of these facts, there is no merit to this assignment of error.
Next, Lifetime and Howard aver that the trial court erred in awarding attorneys' fees in accordance with La. R.S. 9:2781, since plaintiff failed to prove that certified demand had been made on defendants, and failed to demand the "correct amount owed" as also required.
On February 15, 2002, counsel for SZS forwarded a demand letter to Howard and Lifetime at Howard's personal address. Howard was the agent for service of process for Lifetime. At that time, counsel also forwarded the same demand letter via first class mail, which was verified by the U.S. Postal Service's Certificate of Mailing. The certified letter was returned as unclaimed. The letter sent first class was never returned. Howard was served personally with a copy of SZS's petition on April 4, 2002. Lifetime was served through Howard as agent on April 2, 2002.
Under R.S. 9:2781, defendants are liable for attorneys' fees in a suit on an open account. As described above, they were properly notified. Thus, we find no merit to this assignment of error.
Lifetime and Howard next assert that the trial judge was clearly wrong in awarding the plaintiff an additional payment of $29,190.12, when the evidence in the case was that Lifetime agreed to pay plaintiff on an hourly basis with a cap of $500.00 per lot.
At trial, the amount owed per lot was discussed. Howard testified, "I don't know what the charges were at that time. Probably during those years, about $700.00." Moreover, he stated that Mr. Scandaliato ". . . didn't want to do it on a flat fee basis. He said he would do it based on an hourly basis, and he would not charge for his time . . ." Based upon this information, we conclude that the trial judge's award was proper.
In their sixth assignment of error, Lifetime and Howard argue that the trial court erred in finding that plaintiff properly completed the work for Lifetime, thereby entitling plaintiff to payment.
Both Morrison Oaks and Villa del Rey encountered problems that were solely within the ambit of appellants and had nothing to do with SZS. Mr. Hastman testified that Morrison Oaks could have been built except for "a very big legal problem that had very little to do with the actual subdivision of the lots." He stated that the City Planning Commission required that a brick wall be erected and a land swap with the city was necessary to correct the problem. Mr. Hastman further testified that the Sewerage and Water Board would not sign the drawings for Villa del Rey unless a retaining wall was installed along the Dwyer Canal. "Mr. Howard said it was too expensive and he was not going to do it . . ." These problems had nothing to do with the surveys.
Mr. Donald Carr also testified that the problems delaying the projects were "Just the Homeowners' Association over at Lake Carmel. And I can't remember anything *11 else. We were just constantly waiting on the City to see what they were going to do with the road, when they were going to put it in."
Mr. Larry Mickal, a Civil Engineer employed by the Sewerage and Water Board, stated that none of the difficulties argued by Howard/Lifetime were of major importance and could have been corrected. He stated that the prime objective of the Sewerage and Water Board was that such services be placed for accessibility and that variances were regularly made. He averred that the "green electrical box" on private property would not be a problem because it was clearly visible and would not require reconsideration.
In light of these facts, we find that the trial judge was correct in concluding that the problems encountered by Howard/ Lifetime were not caused by SZS, and find no merit to this assignment of error.
Next, Lifetime and Howard claim that the trial court was clearly wrong in finding that Lifetime was not entitled to recover $56,060.00 for the improper design of the utilities at the Morrison Oaks Subdivision.
As discussed above, Howard did nothing to address the problems that were his responsibility. Appellant ordered the pouring of the concrete for the streets of Villa del Rey without arranging for an engineer for testing purposes. At the time of the pouring, Howard and Lifetime were substantially in arrears. Scandaliato testified that no one contacted him regarding the pouring. There was no other witness nor was any evidence adduced that clearly demonstrated that Scandaliato knew anything about the pouring, or that he had any further obligation to perform any inspection or any other work. Appellants paved the street without proper preparation. Mr. Andre of Boh Brothers testified that the pouring without such planning resulted in significant additional costs to the project.
The $56,060.00 bill was submitted as an estimate by Boh Brothers to put in sewer, water line, and repave the street at Morrison Oaks. None of this work was the responsibility of the surveyor. Mr. Hastman testified that Howard agreed to be responsible for obtaining a servitude through the adjacent landowner's property so that the utility line would not have to be placed in the street. However, he did not do so. Based upon these facts, we find no error in this ruling of the trial court.
In their last assignment of error, Lifetime and Howard assert that the trial judge was clearly wrong in refusing to allow defense counsel the opportunity to question witnesses on the true location of the Entergy lines at Morrison Oaks subdivision.
The trial judge permitted counsel for appellants to question virtually every witness on the location of the Entergy lines. He was admonished by the trial judge to stop asking the same question repeatedly. During the testimony of Mr. Mikel regarding the position of the utility lines, the trial judge said, "Hold on, you've done that with Mr. Scandaliato, you did it with Mr. Hastman. I know how far away each thing is. Now don't ask him a question about that. That's what gets me annoyed, because I don't want to go through each one and how far away it is. I've already figured it out."
The trial judge allowed defense counsel great latitude in questioning witnesses about the true location of the Entergy lines at Morrison Oaks subdivision. As such, we deem this assignment of error meritless.
CONCLUSION
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
*12 AFFIRMED.
CANNIZZARO, J., concurs with reasons.
CANNIZZARO, J., concurs with reasons.
I concur in the result that was reached in this appeal, but I agree with the position of Jim Howard and Lifetime Homes, Inc. regarding the admissibility of Exhibits P-1 and P-2. Exhibit P-1 consisted of a U.S. Postal Service certified mail receipt and a U.S. Postal Service certificate of mailing evidencing the mailing of the demand letter to Mr. Howard and Lifetime Homes. Exhibit P-2 consisted of a demand letter, showing a certified mailing number, that was mailed by certified mail to Mr. Howard and Lifetime Homes and a cover letter that was used to mail the demand letter by regular mail. These exhibits were used to evidence that S.Z.S. Consultants, Inc. was entitled to attorney's fees under La. R.S. 9:2781.[1] Because there was no testimony at the trial referring to or identifying the exhibits, I do not think that they should have been admitted into evidence.
It is my opinion that this error is harmless, however, in light of the fact that La. R.S. 9:2781 provides that not only a demand letter but also citation and service of a petition can be used a basis for a claimant's entitlement to reasonable attorney's fees on an open account that is not paid within the time limits established by that statute. Thus, although I disagree with the conclusion of the majority regarding the admissibility of two of the trial exhibits, I concur in the result reached by the majority.
NOTES
[1] La. R.S. 9:2781 provides in relevant part:

A. When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant. Citation and service of a petition shall be deemed written demand for the purpose of this Section.
(Emphasis added.)