197 So.2d 907 (1967)
David D. BUSH d/b/a the Bush Tractor Company
v.
John L. SAUCIER.
No. 7016.
Court of Appeal of Louisiana, First Circuit.
April 17, 1967.
Millard W. Clark, Jr., of Barranger, Barranger & Jones, Covington, for appellant.
David E. Cooley, of Cooley & Cooley, Slidell, for appellee.
Before LANDRY, ELLIS and BAILES, JJ.
LANDRY, Judge.
The sole issue presented by this appeal is whether certain road construction equipment consisting of two tractors and a device *908 known as a "cat scraper" were rented by plaintiff, David D. Bush d/b/a The Bush Tractor Company (Bush), to defendant, John L. Saucier, personally or as agent for his alleged principal, Lafayette Materials, Inc. (Lafayette). After trial on the merits the lower court concluded the rental agreement was made in the name of Lafayette and rejected plaintiff's demand against Saucier individually. From said unfavorable decision, plaintiff has appealed. We find no error in the result reached by the trial court.
It is conceded by both appellant and appellee that the instant appeal presents a question of fact, namely, whether defendant disclosed to plaintiff his intention to act as agent of Lafayette in renting the equipment in question.
The issue thus presented must be resolved in the light of certain applicable legal principles. An agent becomes personally responsible to those with whom he contracts when he does not disclose that he is acting as agent with respect to the transaction involved. LSA-C.C. Article 3013; Chappuis & Chappuis v. Kaplan, 170 La. 763, 129 So. 156; Guillory v. Courville, La.App., 158 So.2d 475.
A most thorough statement of the rules governing the duty of an alleged mandatary to disclose his agency in order to avoid personal responsibility for a contract intended to be confected in the name of his principal is contained in the following language which we quote with approval from Three Rivers Hardwood Lumber Co., Inc. v. Gibson, La.App., 181 So. 607:
"If his agency and the identity of his principal are unknown, an agent, to avoid personal liability on a contract to be entered into on behalf of his principal, has the duty to disclose both the fact that he is acting in a representative capacity and the identity of his principal, for the party dealt with is not required to discover or to make inquiries to discover such facts. Accordingly, where the agent contracts as ostensible principal, regardless of his intention, and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were principal, and he has the same obligations to the other party as if he were not acting for another. If the fact of his agency is known and there is a mutual intention that the principal and not the agent is to be bound, the latter is not liable, although the identity of the principal is undisclosed, but generally, unless there is an agreement or mutual intention of the parties to the contract that the agent should not be bound, an agent who enters into a contract in his own name without disclosing the identity of his principal renders himself personally liable, even though the other party knows that he is acting as an agent. Where the other party has actual knowledge of the agency and the identity of the principal, the agent will be relieved from liability, whether he himself makes the disclosure or the other party acquires the knowledge through some other source, but actual knowledge is necessary, and it is not sufficient that the third person has knowledge of facts and circumstances which would, if reasonably followed by inquiry, disclose the identity of the principal. An express notice of agency and the identity is not necessary, however, if the third person may be charged with notice by reason of the attendant circumstances and the facts surrounding the transaction, coupled with the general knowledge that transactions of the agent in that particular line of business are entered into in his character as agent, not on his own behalf, but the mere fact that one is known to be a professional agent usually employed in contracting as agent for *909 others is not of itself sufficient where the agent contracts in his own name as ostensible principal."
The record herein is undisputed to the effect the rented equipment was used on a road construction job in the vicinity of Slidell, Louisiana, and known as the Pearl River Job, on which Lafayette was the prime contractor. It further appears without contradiction that Saucier had, in one capacity or another, been connected with Lafayette for a number of years. Apparently, their relationship varied from job to job. In some instances Saucier sub-contracted work from Lafayette and in others he ostensibly served as their employee on either a straight salary or some other mutually satisfactory arrangement. It is only fair to state, however, that as to the job in question the testimony of defendant and Max Johnson, President of Lafayette, is conflicting with respect to whether defendant was acting as an employee of or as an independent sub-contractor engaged to perform that aspect of the project known as "grubbing."
In substance plaintiff Bush testified he rented the equipment to defendant individually and not to Lafayette. He acknowledged that at the time arrangements were made for the machinery, defendant "mentioned Lafayette Material" but that he, plaintiff, did not rent to Lafayette and so advised defendant. At another point in his testimony plaintiff averred that defendant mentioned "That he was working for, that he was doing a job, a road job and that Lafayette Material might have something to do with it. I didn't know whether he was subbing under Lafayette Material or what, or whether he was sub-contracting or what he was."
Plaintiff's wife (and bookkeeper), Mrs. Virginia Lee Bush, in substance deposed subject equipment was rented during the months of July and August, 1961. As bookkeeper for her husband's concern, she billed the rental due to defendant at a Baton Rouge address which she understood to be defendant's residence. She later mailed statements to defendant at Slidell, care of one A. B. Crow, 1300 Front Street, pursuant to a telephone conversation with appellee. Mrs. Bush was not certain that she had ever mailed any of the statements to Lafayette but that if she did so it was upon instruction from her husband. She had no knowledge of the conversation between her husband and the defendant regarding the details of the negotiations which preceded the lease of the equipment, excepting what Mr. Bush may have told her.
Defendant Saucier, in effect, testified that as to the job in question he was the employee of Lafayette with a drawing account. He stated he first met plaintiff at Mr. Crow's place in Slidell and rental of machinery was discussed on that occasion but no agreement reached. Later, defendant contacted plaintiff by telephone and the deal was closed. Defendant first testified that when agreement was reached "it was understood that Lafayette Material would pay the bill." Subsequently, he testified unequivocally that he told plaintiff in the telephone conversation that he, defendant, "was working for Lafayette Material and all charges on that job was to be billed to Lafayette Materials." Defendant conceded that statements covering the rentals were mailed to him personally and were by him transmitted to his employer, Lafayette.
Max Johnson, Lafayette's President, in effect testified defendant was not an employee or agent but rather an independent contractor who sub-contracted a portion of the Slidell job. His testimony, however, was most inconclusive in that he stated he "believed" his concern had a written contract with defendant for this particular job but did not know whether a copy thereof was in his files. He "did not believe" *910 defendant was on a salary at the time. It was his "understanding" that defendant was not an agent of Lafayette with authority to bind that concern although he did not know "if we had a conversation about it." Johnson admitted that from time to time bills submitted by Saucier were paid by his company although not all were paid because Saucier did jobs for other concerns.
In corroboration both of his claim of agency and disclosure thereof to plaintiff, defendant introduced in evidence numerous invoices for parts, supplies, and miscellaneous items purchased in the name of Lafayette Materials, Inc. from merchants in the Slidell area and used on the Pearl River Job. Additionally, defendant produced Mr. Arthur B. Crow, local Texaco dealer, who identified several invoices covering gasoline, diesel fuel and grease used and consumed in the rented equipment and billed directly to Lafayette upon instruction from defendant to the effect that defendant was the employee of said concern. There also appears of record copies of two payroll checks drawn on Lafayette and payable to employees engaged by Saucier to do work on the Pearl River Job. Defendant also produced one Charles Delaughter who testified he was employed by Saucier on the job in question as a bulldozer operator but that his wages were paid by checks drawn on Lafayette.
We conclude the trial court properly found the evidence adduced by defendant discharged the burden incumbent upon him to corroborate his alleged disclosure by proof other than his own declarations as held in Guillory v. Courville, La.App., 158 So.2d 475.
Accordingly, the judgment of the trial court is affirmed at appellant's cost.
Affirmed.