517 So.2d 1085 (1987)
William TRAVIS, Plaintiff-Appellant,
v.
Ken HUDNALL, d/b/a S & G Marine, et al., Defendants-Appellees.
No. 86-856.
Court of Appeal of Louisiana, Third Circuit.
October 7, 1987.
Henry H. Lemoine, Pineville, for plaintiff-appellant.
John C. Conine, Luster, Conine & Brunson, Natchitoches, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
*1086 DOUCET, Judge.
Plaintiff William Travis instituted this action in redhibition following his purchase of an allegedly defective motor boat. Named as a defendant was Ken Hudnall d/b/a S & G Marine (S & G). Also named as defendants were Blacklake Fiberglass, Inc. (Blacklake) and Cane River Trailers, Inc. d/b/a Cane River Used Boats (Cane River), all business corporations owned by George Riley.[1] Blacklake filed a reconventional demand against plaintiff and Cane River filed a third party demand against Ken Hudnall. Plaintiff appeals from the portion of the trial court judgment dismissing his demands against Blacklake and Cane River. No other party has appealed.
The undisputed facts show that in February 1983, defendant, Ken Hudnall, doing business in Jonesville as S & G, delivered to defendant, Cane River, a 1980 bass fishing boat, together with a 150 h.p. outboard motor, a trolling motor, and a trailer. The boat ensemble was then offered for sale at Cane River. Plaintiff, William Travis, saw the boat at Cane River and agreed to purchase it.
What purports to be a bill of sale was drawn up on a standard form which had no printed heading. The name, address, and phone number of Cane River were written in longhand at the top of the form but it was not designated as "seller." The boat, motors, and trailer were listed, as were plaintiff's name and address. The sale price was $9,000.00 less $2,375.00 for a trade-in, plus tax. George Riley signed the form next to the designation "salesman." This bill of sale was dated February 9, 1983.
On February 24, 1983, an Act of Chattel Mortgage was executed listing the seller of the same boat to plaintiff as S & G Marine. The instrument further listed Ken Hudnall as the seller's representative and was signed by him in that capacity. The instrument was notarized by Hudnall's wife. Plaintiff and his wife signed the instrument later.
Shortly after plaintiff took possession of the boat it began to leak. He eventually returned it to Cane River and Mr. Riley for repairs. Plaintiff also had problems with the boat's trim motor which was repaired by someone other than the defendants. Mr. Riley, as Blacklake, eventually repaired the leak in the boat hull but by that time plaintiff stated that he did not want the boat back. He subsequently filed this suit in redhibition seeking return of the full purchase price, general damages, and attorney's fees.
Following trial on the merits, the district judge found in favor of plaintiff and against Ken Hudnall d/b/a S & G, ordering a reduction in the purchase price of the boat, general damages, and attorney's fees. Plaintiff's demands against Blacklake and Cane River were dismissed after the court found that they were not the sellers. The trial judge made the following findings of fact relevant to the nature of the arrangement between Hudnall and Cane River.
"From a mass of conflicting testimony the court finds the facts to be as follows. Approximately ten days prior to February 24, 1983, Ken Hudnall, who does business as S & G Marine, brought to Natchitoches from his place of business in Jonesville a 1980 model Hydrasport bass boat equipped with a 1983 model 150 horsepower Mariner outboard. He took it to George Riley who did business as Cane River Used Boats, advising him that it was not selling in Jonesville and requesting that he try to sell it in Natchitoches. Mr. Riley and the other principal stockholder in their corporation, Joseph LeBrum, agreed to pay Mr. Hudnall a deposit, keep the boat for two weeks and make a diligent effort to sell it. It was further agreed that if the boat did not sell within two weeks, Hudnall would pick the boat up and return the deposit. Before the two weeks elapsed, the plaintiff, Mr. Travis saw the boat and agreed to buy it. On February 24, 1983 the sale was formally consummated between Hudnall and Travis. The sales price was financed and the check *1087 was endorsed by Hudnall and given to Riley at the time of the sale. The difference between the amount of this check and the deposit previously paid to Hudnall was the commission earned by Riley's corporation for making the sale. The court specifically finds that neither Riley nor his corporation ever owned the boat but instead were agents of Hudnall for the purpose of selling the boat."
On appeal plaintiff cites only one assignment of error, that the trial court erred in finding that there was no sale from Ken Hudnall and S & G to Cane River.
The finding by the trial court that there was no sale is a finding of fact which may not be disturbed on appellate review unless the record furnishes no reasonable factual basis for the finding or it is clearly wrong. Arceneaux v. Domingue, 365 So. 2d 1330 (La.1978).
The facts in dispute concern the nature of the transfer of the boat from S & G to Cane River. Ken Hudnall testified that he had originally sold the boat in question to another party who later traded it back to him. He claimed that he then sold the boat to Cane River which paid for it with a check. He was unable to recall the price paid by Cane River and he claimed that his records, including an invoice listing the boat in question, had been destroyed by water damage. Mr. Hudnall also testified that titles to boat trailers sold to Cane River, including the one in question, were transferred at the time of sale or within thirty days.
Explaining the chattel mortgage instrument, Mr. Hudnall stated that the plaintiff desired financing for the boat through Finance America, a company which normally finances boats for S & G customers. Cane River was not a registered dealer for Finance America and Hudnall claimed that Mr. Riley asked him to sell the boat through S & G so that plaintiff could obtain the desired financing. Thus he claimed, solely as a favor to Mr. Riley, he agreed to this arrangement. He and his wife met with Mr. Riley and Mark Poole of Finance America whereupon he signed the chattel mortgage instrument and endorsed the check over to Mr. Riley. Mr. Hudnall testified that he was not the owner of the boat in question at the time it was sold to plaintiff nor was he the seller.
George Riley testified that Cane River never purchased the boat from Mr. Hudnall. He admitted that Mr. Hudnall contacted him and offered to sell the boat to him, however, he claimed that he thought Mr. Hudnall was asking too much for the boat and agreed instead to try to sell it for him. He testified that he gave Mr. Hudnall the check, for an amount he remembered as being $7,000 or $8,000, as a deposit, with the understanding that if he could not sell the boat within two weeks, Mr. Hudnall would take the boat back and return the money to him.
Mr. Riley further testified that the boat was sold to plaintiff and he kept the proceeds from that sale as well as those from the sale of plaintiff's trade-in. He stated that he received no paperwork on the boat, motors, or trailer when Mr. Hudnall left the boat with him. He denied that he asked Mr. Hudnall to sell the boat through S & G so that plaintiff could get the financing he desired. He did remember that the plaintiff told him that he (the plaintiff) was going to Finance America to try and get the boat financed.
Mr. Riley freely admitted that on other occasions, Cane River had purchased boats from Mr. Hudnall for resale. He also testified that Cane River had sold other boats on a consignment basis. At the time of trial, he claimed that Cane River had three or four such boats on consignment. He stated that only the week prior to trial he sold a boat on consignment. That consignment arrangement was similar to the one in the case at bar. Mr. Riley testified that at the time the owner delivered the boat to him, he gave a sum of money with the understanding that if he could not sell the boat, the man would return the money to him. He stated that sometimes he gives such "deposits" to the consignor and sometimes he doesn't. He testified that he did not receive an invoice listing the boat as he normally would when he purchased boats from Mr. Hudnall. He received no bill of *1088 sale and the title to the trailer was not transferred to him.
Joseph E. Lebrum, at one time a minor stockholder in Cane River, testified that he was present when Mr. Riley and Mr. Hudnall had a discussion concerning the boat in question. He recalled that Mr. Hudnall was trying to sell the boat in the Jonesville area without much success. He claimed that Mr. Hudnall asked them to try and sell it in the Natchitoches area. Mr. Lebrum understood that Cane River would attempt to sell the boat but if they were unable to do so within two weeks, Mr. Hudnall would accept the boat back and return the deposit given by Mr. Riley which the witness remembered as being $7,000. Mr. Lebrum characterized the arrangement as a consignment. He confirmed that Cane River had in the past purchased boats from Mr. Hudnall. On those occasions, he testified, Cane River received a bill of sale and certificates of title for any trailers purchased.
The plaintiff testified that he purchased the boat from Mr. Riley at Cane River and never had any contact with Mr. Hudnall or anyone else at S & G during the negotiation for the sale. He and his wife did not sign the chattel mortgage instrument at the same time it was signed by Mr. Hudnall. However, when a problem later occurred with the power trim motor, plaintiff had it fixed and contacted Mr. Hudnall to pay the bill after Mr. Riley informed him that Mr. Hudnall held the warranty. He stated that Mr. Hudnall told him to send a copy of the bill to him together with the old parts replaced, and he would send him a check. He did so, but Mr. Hudnall failed to send the check as promised.
When a crack appeared in the boat hull and it began leaking, plaintiff contacted Mr. Riley, and, subsequently, Mr. Hudnall. He went back and forth between the two men until, he claimed, Mr. Hudnall told him to bring the boat to Mr. Riley who, as Blacklake, did fiberglass repairs. Hudnall allegedly stated that he would "get with Mr. Riley for the repayment of repairs."[2] He stated that at the time of the sale and execution of the chattel mortgage, he did not think anything of S & G being listed as the vendor because, he was told, "that's who was handling the warranty."
Mark Poole was with Finance America at the time these events transpired and assisted with the finance arrangements for plaintiff's purchase of the boat. He also witnessed the execution of the Act of Chattel Mortgage. He first testified that he was contacted by either plaintiff or Mr. Riley concerning possible finance arrangements. He later admitted that he was not sure whether he had ever spoken with Mr. Riley prior to the execution of the chattel mortgage on February 24, 1983. The witness informed the party who contacted him that the purchase could not be financed by his company because Cane River was not an approved dealer. He testified that Mr. Hudnall advised him that he was going to do a favor for Mr. Riley and make the sale through S & G. Mr. Poole stated that prior to the events surrounding this sale he had never met the plaintiff or Mr. Riley.
On appeal, the plaintiff cites La.C.C. arts. 2439 and 2456.
La.C.C. art. 2439 states:
"The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent."
La.C.C. art. 2456 states:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
Applying these principles of law to the facts of this case, plaintiff reasons that there was a perfected sale between Mr. Hudnall and Cane River.
*1089 Both Mr. Riley and Mr. Lebrum characterized the transaction as a "consignment." Black's Law Dictionary, 5th Ed. 1979, defines consignment as the "entrusting of goods to another to sell for the consignor" and as a "bailment for sale." The definition further reads, "the term `consignment', used in a commercial sense, ordinarily implies an agency and denotes that property is committed to the consignee for care or sale." A bailment is defined as a delivery of goods by one person to another for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both. A bailee is defined in part as a species of agent.
Consignments are recognized in Louisiana. Harry Winston v. Levin, 130 So.2d 717 (La.App. 4th Cir.1961); Winru Chemical & Sales Co. v. Collier, 73 So.2d 9 (La.App. 2nd Cir.1954).
The trial judge chose to believe the testimony of Mr. Riley and Mr. Lebrum that it was not the intention of the parties to effect a sale, but instead that Cane River would accept the boat from Mr. Hudnall on a consignment basis. The testimony of the plaintiff and Mr. Poole was essentially consistent with that of Riley and Lebrum. Mr. Hudnall's testimony was directly contradictory insofar as he claimed the parties intended and perfected a sale. The trial judge apparently determined that Mr. Hudnall thus testified falsely. We note that the trial judge found that Mr. Hudnall was a bad faith seller because he knew the boat hull was defective and failed to declare it. Mr. Hudnall had testified that he did not know of the defect. The finding of bad faith on his part evidences a finding by the trial judge that Mr. Hudnall lied in denying knowledge of the defect.
Plaintiff places much emphasis on the transfer of the check for $7,000 from Cane River to Mr. Hudnall. He argues that the sale was perfected because there was an agreement, as set forth in La.C.C. art. 2439, by which Mr. Hudnall gave the boat to Cane River for $7,000 and Cane River gave the $7,000 in order to have the boat. Accepting the testimony of Mr. Riley and Mr. Lebrum as the trial court did, and considering the record evidence as a whole, we are unable to find that the parties intended to perfect a sale. While the giving of the "deposit" of $7,000 might be considered slightly unusual, the parties were free to enter into any type of arrangement they wished.
The trial court characterized Mr. Riley, or more properly, Cane River, as an agent for Mr. Hudnall d/b/a S & G. An agent is one who acts for or in the place of another by authority from him. La.C.C. arts. 2985, 2986, 2992; Jackson v. Wal Mart Properties, Inc., 452 So.2d 409 (La. App. 3rd Cir.1984). By his own admission George Riley sold the boat for, and acting on authority from, Ken Hudnall. Cane River was therefore the agent of Ken Hudnall for the purpose of selling the boat ensemble to plaintiff.
The record evidence establishes that George Riley never disclosed to the plaintiff that he was selling the boat for another. In Centanni v. A.K. Roy, Inc., 258 So.2d 219 (La.App. 4th Cir.1972) the court stated:
"It is well settled that an agent becomes personally responsible to those with whom he contracts when he fails to disclose fact of his agency and name of his principal at the time of making the contract. LSA-C.C. Art. 3013; Tri-State Oil Tool Company of Southern Louisiana v. Pioneer Oil & Gas Co., Inc., 135 So.2d 297 (La.App., 4th Cir., 1961); Bush v. Saucier, 197 So.2d 907 (La.App., 1st Cir., 1967); Wilson v. McNabb, 157 So.2d 897 (La.App., 1st Cir., 1963). The principal must be disclosed before the contract is entered into or liability is incurred. McKay v. Vesley, 163 So.2d 121 (La.App., 3d Cir., 1964); Melancon v. Keller, 136 So.2d 67 (La.App., 4th Cir., 1962). In McKay v. Vesley, supra, the court citing 3 C.J.S. Agency § 216a, b and c, held that:
`a. Necessity for Disclosure.
`An agent contracting as principal is personally liable; if he contracts as agent for an undisclosed principal, he will be personally liable unless there is a mutual intention of the parties to the contrary.
* * * * * *
*1090 `b. Time of Disclosure.
`The principal must be disclosed before the contract is entered into or before liabilities are incurred.
* * * * * *
`c. Sufficiency of Disclosure.
`The agent should give adequate notice of the identity of his principal, but he need not disclose his name, if he is sufficiently identified in some other manner.'"
See also Ruckman v. Mashburn, 428 So.2d 531 (La.App. 4th Cir.1983).
We therefore find that Cane River is liable to plaintiff because George Riley failed to disclose that Cane River was an agent acting for Ken Hudnall. Accordingly, defendants Cane River Trailers, Inc. d/b/a Cane River Used Boats, and Ken Hudnall d/b/a S & G Marine, are liable in solido to plaintiff, William Travis. There was no evidence introduced at trial that Blacklake Fiberglass, Inc. was involved in the sale of the boat ensemble. Blacklake's role was apparently limited to repairing the defect in the boat hull which appeared subsequent to the sale. Therefore, the trial court's dismissal of Blacklake was correct.
For the reasons assigned, the judgment of the trial court is reversed insofar as it dismisses plaintiff's suit against defendants Cane River Trailers, Inc. d/b/a Cane River Used Boats. Judgment is amended and recast to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of William Travis recognizing him as the owner of one (1) 1980 Model Hydrasport bass boat equipped with a 1983 Model 150 horsepower Mariner outboard motor, 1983 12V Trolling motor, and one (1) 1983 Custom trailer, granting him the right to the possession of the boat, motors and trailer immediately.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment granting him a reduction of the purchase price as set forth below:
(a) In favor of William Travis and against Ken Hudnall d/b/a S & G Marine and Cane River Trailers, Inc. d/b/a Cane River Used Boats, in solido, for one-half the purchase price of the boat or the sum of $4,665.63, plus legal interest from date of judicial demand;
(b) In favor of William Travis and against Ken Hudnall d/b/a S & G Marine and Cane River Trailers, Inc. d/b/a Cane River Used Boats, in solido, for one-half the interest and finance costs, or the sum of $2,118.34, plus legal interest from date of judicial demand;
(c) In favor of William Travis and against Ken Hudnall d/b/a S & G Marine and Cane River Trailers, Inc., d/b/a Cane River Used Boats, in solido, for general damages in the amount of $3,000.00, plus legal interest from date of judicial demand; and
(d) In favor of William Travis and against Ken Hudnall d/b/a S & G Marine and Cane River Trailers, Inc. d/b/a Cane River Used Boats, in solido, fixing reasonable attorney's fees at $3,500.00, plus legal interest from date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that defendants be cast with all costs of the proceedings in the trial court as well as all costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; RECAST AS AMENDED.
NOTES
[1] Plaintiff dealt with George Riley who apparently was the sole shareholder of Blacklake and Cane River corporations.
[2] George Riley testified that he was going to repair the boat even if he wasn't paid because Cane River was involved.