# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-574

**JAMES PATRICK CLUSE**
**D/B/A J.P. CLUSE CONSTRUCTION**

**VERSUS**

**H & E EQUIPMENT SERVICES, INC**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO: 71398
HONORABLE GERALD B. WATTIGNY,  PRESIDING
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Sylvia R. Cooks, John D. Saunders, David J. Painter, James T. Genovese and Shannon J. Gremillion Judges.

**Genovese,  J., dissents.**
**Gremillion, J., dissents and assigns written reasons.**

**REVERSED AND RENDERED.**

Stan Gauthier, II Law Corporation
Nicole Laborde Romero
1405 West Pinhook Road, Suite 105
Lafayette, LA 70503
Tel.(337) 234-0099
Fax(337) 234-7437
COUNSEL FOR PLAINTIFF/APPELLANT:
James Patrick Cluse

Taylor, Porter, Brooks & Phillips L.L.P.
John Ashley Moore
William H.L. Kaufman
P.O. Box 2471
Baton Rouge, LA 70801/70821
Tel. (225) 387-3221
Fax. (225) 346-8049
COUNSEL FOR DEFENDANT/APPELLEE:
H & E Equipment Services, Inc.

**COOKS, Judge**.

## FACTS

James Patrick Cluse d/b/a J.P. Cluse Construction (Cluse) traded in a 2001 Kamatsu bulldozer for a 2003 bulldozer with H&E Equipment Services, Inc. (H&E) on October 9, 2006. Cluse's dealings with H&E began in June 2006 when he brought his 2001 dozer to H&E's shop in Maurice, Louisiana, to diagnose a problem. At that time Cluse met H&E's salesman, Brent Broussard (Broussard), and told him the 2001dozer was in the shop for transmission repair. On July 26, 2006, H &E advised Cluse that it believed the 2001 dozer needed approximately twenty-six thousand dollars worth of repair to the transmission.

Cluse originally purchased the 2001 dozer from Motion Equipment (Motion) in Tomball, Texas, shortly before he took it to H&E. As Cluse had only used the dozer approximately 13 hours since he purchased it from Motion, he called them concerning this recommendation for repair. Motion advised Cluse to ship the dozer to them for repair intending to stand behind the item it had recently sold to Cluse. Motion changed the transfer pump on the 2001 dozer at its cost and advised Cluse that the repairs were complete, informing Cluse that with these repairs the dozer would work anywhere from two months to five years. Motion also provided Cluse with an estimate for the costs of a new transmission and advised Cluse that RMS Heavy Equipment Repair had serviced the transmission on this dozer on August 10, 2006. After the dozer was returned to Cluse from Motion, Cluse used the dozer to do dirt work and push trees for about a month.

Cluse contacted various entities, including H&E, for quotes on the price of a new dozer. He informed Broussard at H&E that he wanted to trade the 2001 dozer for a 2003 dozer. On September 21, 2006, Broussard was given full access to the dozer for inspection, without Cluse present, and was free to speak to two of Cluse's

employees present at the site. One of Cluse's workers, Clifton Rossyion (Rossyion), spoke with Broussard about the condition of the 2001 dozer and informed him that the dozer had recently been repaired in Houston, that, at times, it would stop pulling while at other times it worked fine. Rossyion informed Broussard he believed the recent replacement of the pump had not cured the real cause of the problems he was experiencing with the dozer, and he thought Motion should have changed the torque converter or done more work on the transmission. In his opinion this would have been a more appropriate solution to the dozer's pulling problem. However, Rossyion testified Cluse was not experiencing problems while using the dozer after its return from Motion.

Broussard conducted an inspection and ran the machine a few minutes, apparently satisfied with his inspection for H&E. Broussard prepared an inspection report for H&E expressing his concerns about the transmission and the slight hesitation with the dozer moving forward. H&E, through its salesman Broussard, contacted Cluse and made a written offer to sell him the 2003 dozer he was interested in for sixty-eight thousand dollars. Cluse agreed to purchase the 2003 dozer for that price. H&E, again through Broussard, offered to accept Cluse's 2001 dozer as a trade-in for fifty-two thousand dollars. Cluse agreed to accept this offer. Both parties signed a document entitled "Sales Quotation" on the first page and "Order" on the second page. This document is dated "10/9/2006". The "Sales quotation" and "Order" are signed by "Pat Cluse for J.P. Cluse Construction" and by "Brent Broussard H&E Equipment Services." The 2003 dozer was delivered to Cluse four days later, and Cluse's 2001 dozer was picked up from him by H&E. Charles Nichols, (Nichols), Branch Manager for H&E, testified that he did not see the document, which has a blank for the manager's signature, until eleven days after it was signed

1

by Cluse and about seven days after delivery of the 2003 dozer to Cluse. A few days later, Broussard telephoned Cluse to inquire as to who changed the transfer pump on the 2001 dozer. Cluse informed Broussard that Motion had performed the work. Broussard later called Cluse informing him the "deal" had to be redone as H&E had discovered problems with the transmission on Cluse's 2001 dozer. Cluse did not believe there was any basis to redo the trade-in with H&E, and refused to return the 2003 dozer or to change the sale agreement.

On October 25, 2006, Cluse's daughter, Andrea Cluse (Andrea), was contacted by a Louisiana State Police Officer, Trooper Craig Alexander (Alexander), who advised her H&E wanted to recover its 2003 dozer in her father's possession or it would file criminal charges against him. The officer then called Cluse and told him the same. Cluse believed he was in lawful possession of the 2003 dozer purchased from H&E and refused to relinquish possession. Shortly thereafter, H&E located the 2003 dozer on one of Cluse's job-sites near Arnaudville, Louisiana, and confiscated the 2003 dozer. H&E then returned Cluse's 2001 dozer to that same job-site in an unusable condition.

Cluse filed suit against H&E alleging unlawful conversion of his property, i.e. the 2003 dozer, and alleging damages for defamation of character because criminal charges were filed against him by H&E. H&E filed an exception of improper venue. After a full evidentiary hearing on the exception, the trial court granted H&E's exception finding there was no completed contract of sale. This court granted a writ and rendered a decision finding Cluse alleged claims sufficient to support venue in St. Martin Parish. *James Patrick Cluse v H&E Equipment Services, Inc.* H&E thereafter filed an answer and reconventional demand alleging if a sale was completed, then H&E is entitled to a recission of the sale based on fraud and

2

redhibition. In its demand, H&E also alleges Cluse intentionally misrepresented the condition of the 2001 dozer traded-in to it.

The matter was tried before a jury which returned a verdict in favor of H&E finding there was not a completed sale of the 2003 dozer to Cluse. The jury found H&E's claims of recission and redhibition were moot. The jury also found H&E was not liable for any damages due to Cluse's defamation claim. Additionally, although the jury found there was no completed sale of the 2003 dozer to Cluse, the jury refused to award any amount of money to H&E for Cluse's use of the 2003 dozer while it was in his possession. Under the verdict form presented to the jury, because the jury found there was no sale of the 2003 dozer from H&E to Cluse, the jury was directed to make no finding regarding the issues of whether H&E wrongfully converted the 2003 dozer from Cluse, whether H&E knew of defects in the 2001 dozer or could have discovered such defects by reasonable inspection, or whether Cluse knew or should have known of the transmission defect in the 2001 dozer when he traded it to H&E for the 2003 dozer. Cluse appeals asserting the jury erred in finding there was no sale of the 2003 dozer and in failing to award damages for Cluse's defamation claim. H&E answered the appeal preserving its claims raised in its reconventional demand.

### ANALYSIS

We find the jury erred as a matter of law in concluding there was not a completed sale of the 2003 dozer to Cluse. Because we find the jury committed legal error we must review the case *de novo*.

> Appellate review of a question of law is simply a decision as to whether the lower court's decision is legally correct or incorrect. *Phoenix Assur. Co. v. Shell Oil Co.*, 611 So.2d 709 (La. App. 4 Cir. 1992). If the trial court's decision was based on its erroneous application of law, rather than on a valid exercise of discretion, the trial

3

court's decision is not entitled to deference by the reviewing court. *Kem Search, Inc. v. Sheffield*, 434 So.2d 1067 (La. 1983).

*Ducote v. City of Alexandria*, 95-1269, p. 2 (La.App. 3 Cir. 7/17/96), 677 So.2d 1118, 1120.

Therefore, when the trial court has made an error in the interpretation or application of law, the appellate court must review the record in its entirety *de novo* and render a judgment on the merits. Rosell [v. ESCO, 549 So.2d 840, 850 n.2 (La. 1989)]

*Young v. Young*, 06-77, pp. 3-4 (La.App. 3 Cir. 5/31/06), 931 So.2d 541, 544-45.

A contract of sale is governed by provisions of the Louisiana Civil Code in Title IV "Conventional Obligations Or Contracts" and Title VII "Sale." Louisiana Civil Code Article 2439 defines a sale as the following,

Sale is a contract whereby a person transfers ownership of a thing to another for a price in money.

The thing, the price, and the consent of the parties are requirements for the perfection of a sale.

Ownership of the thing sold "is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the price paid." La.Civ.Code art. 2456.

Consent of the parties is defined in La. Civ. Code art. 1927 as follows:

A contract is formed by the consent of the parties established through offer and acceptance.

Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent.

Unless otherwise specified in the offer, there need not be conformity between the manner in which the acceptance is made.

The evidence clearly demonstrates there was offer, acceptance, and delivery of the thing sold. H&E prepared and provided a written offer to Cluse which clearly

4

identified the 2003 dozer to be sold to Cluse and the 2001 dozer to be traded-in, the price for which H&E was willing to sell the 2003 dozer to Cluse, the value it was willing to credit Cluse for his 2001 dozer as a trade-in, the interest rate and monthly payment amount Cluse would owe to pay the balance due, and a 90 day powertrain warranty provision. On the document captioned "Order," prepared by H&E, the document is marked with the designations "new customer," "Sale," "used," and recites "Sold to J.P. Cluse Const." On the signature lines, at the bottom of the contract, appears the word "Accepted" and on the next line is printed "H&E Equipment Services, L.L.C." On the next line is printed "By" with a signature line identified beneath it as the line for the "salesman" to sign for H&E. That line is in fact signed by Mr. Brent Broussard. On the right-hand bottom of the page appears the printed name "J.P.Cluse Const." and beneath that line is the signature "Pat Cluse."

On another document prepared by H&E captioned "Sales Quotation," appears a signature line for "Brent Broussard H&E Equipment Services" and thereon appears the words "Customer Acceptance of this Proposal" beneath which appears the signature of Cluse and the date "10/09/06." This document is addressed to "Pat Cluse, J.P. Cluse Construction" and begins by stating "H&E Equipment Services is pleased to submit the following quotation for your consideration." The document then describes in detail the 2003 dozer being offered for sale to Cluse, a description of the 2001 dozer to be accepted for trade-in from Cluse, the amount for which H&E is offering to sell the 2003 dozer to Cluse, the amount which H&E is willing to credit Cluse on trade-in for his 2001 dozer, the sales tax, and finance rates for 24 months of payments on the balance due.

Clearly there was offer and acceptance and, thus, a completed sale. All of the elements are present. Additionally, H&E delivered the 2003 dozer to Cluse, who

5

took possession of it immediately upon delivery, and the 2001 dozer was delivered into H&E's possession. No one disputes any of these facts. Ownership of the 2003 dozer took place with Cluse acknowledging by his signature that he accepted H&E's offer as written. *See* La.Civ.Code art. 2456. The thing, the price and consent were all undeniably present and perfected with Cluse's written acceptance of H&E's offer.

We are not persuaded by H&E's contention that the language on the contract of sale which recites "All orders subject to approval" and a signature line below which appears the words "Branch Manager Approval," means there could be no completed sale unless and until a branch manager signed the document. We find this language is ambiguous, at best, and is subject to more than one reasonable interpretation. The language appears in the same small print as the language concerning the 90 day warranty in the same area of the document and could easily be read as referring to the warranty.

The determination of whether the language in a contract is clear or ambiguous is a question of law subject to *de novo* review. *See McKinley v. Scott*, 98-263 (La.App. 3 Cir. 10/28/98), 721 So.2d 1018, *writ denied*, 99-117(La. 3/12/99), 739 So.2d 207 and *Boykin v. PPG Indus., Inc.*, 08-117 (La. App. 3 Cir. 6/18/08), 987 So.2d 838, *writ denied*, 08-1635 (La. 10/31/08), 994 So.2d 537. As we have already stated, the contract includes the words "sale" and "sold to J.P. Cluse Const", words which are clear and unambiguous. Additionally, there was delivery of the thing sold to Cluse and partial payment of the purchase price by delivery of the used dozer to H&E. No evidence, other than H&E's self-serving testimony after-the-fact, in any way indicates these parties intended to make a conditional sale as H&E asserts.

In further support of this contention, H&E relies on the provisions of La Civ. Code art. 1947 and or La. Civ. Code art. 2460. Louisiana Civil Code Article 1947

6

provides:

> When, in the absence of a legal requirement, the parties have contemplated a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form.

Louisiana Civil Code Article 2460 provides:

> When the buyer has reserved the view or trial of the thing, ownership is not transferred from the seller to the buyer until the latter gives his approval of the thing.

H&E misconstrues the recited law and ignores the previously discussed law on contracts of sale. Mr. Charles Joseph Nichols (Nichols), the H&E Branch Manager, testified "When I got the document, it's a sale; and if the numbers look good, that's fine. But they came to me shortly after I got the document and says, 'We're having trouble with the transmission on the dozer.'" This testimony again indicates that the document at issue evidenced a sale, even to the branch manager, but because H&E made a bad appraisal of the 2001 dozer, it unilaterally decided not to call the transaction a completed sale.

Even if we assume that Article 2460 applies to dealer trade-ins, and H&E had a right to the "view and trial" of the 2001 dozer before the trade/transfer was perfected, H&E was accorded full opportunity to inspect the 2001 dozer prior to cementing the deal by delivery of the 2003 dozer and taking possession of the dozer. Broussard conducted an inspection of the 2001 dozer and filled out an inspection sheet entered into evidence. The content of that inspection sheet is revealing. Among other notations on that sheet, Broussard lists the general condition of the 2001 dozer as "good" and leaves several items on the form blank. Despite the fact that Broussard describes the condition of the dozer as "good," H&E asserts Cluse misled them about the condition of the dozer when he allegedly described the condition of the same dozer as "good." The inspection form indicates Broussard checked out the diesel

7

engine and observed no problems, he checked out the starting system and noted no problems, he checked out *the transmission and commented that the transmission shifts in all gears, but noted that there is hesitation "slightly when shifted to forward."* (emphasis added). Part five, entitled "Torque Converter," is left blank. Parts six through seventeen on the inspection report detail Broussard's inspection of the 2001 dozer and even list the percentage of wear remaining on various essential components of the equipment which he lists as sixty percent to eighty per cent of wear remaining on these various detailed components of the dozer.

Apparently Broussard was not interested in making a more thorough determination of the condition of the transmission or figuring out why it appeared, as he noted, to be experiencing some problem when shifted forward. H&E was given full access to the 2001 dozer to fully inspect it before offering a trade-in value to Cluse. Further, the record demonstrates H&E was familiar with the condition of the 2001 dozer even before Broussard inspected it just prior to the transaction at issue. H&E inspected the dozer to diagnose earlier problems Cluse was having with it. Thus, nothing indicates that when H&E made its offer to Cluse such offer was contingent on any suspensive condition regarding further "view or trial" of the 2001 dozer. H&E made an offer which was accepted for a certain price, which was paid in part by a trade-in and in part to be paid by financing, the terms of which were laid out in the agreement. Such action would alone have amounted to a sale even without delivery, but here there was in fact delivery of the thing sold, the 2003 dozer, and delivery of the 2001 dozer traded-in placing both parties in physical possession of their respective property.

> A contract is an agreement by two or more parties whereby obligations are created, modified, or extinguished. La Civ.Code art. 1906. There are four necessary elements for a valid contract: capacity, consent, object, and lawful

cause. La. Civ.Code arts. 1918, 1927, 1966, 1971. In other words, the parties must have the capacity to contract and give their consent freely for a certain object, and the contract must have a lawful purpose. *Id.* Both parties must be bound in order for there to be a contract.

*Leger v. Tyson Foods, Inc.* 95-1055 p. 5 (La.App. 3 Cir. 1/31/96), 670 So.2d 397, 401. The parties to this contract of sale had the capacity to contract. Consent is evidenced by the offer and acceptance of the offer, and further evidenced by delivery of the object sold. The object of the sale is clearly identified, and the cause was lawful.

Having concluded that a sale occurred, we also conclude that H&E acted improperly in removing the 2003 dozer from the lawful possession of Cluse after ownership of that dozer passed to Cluse. The Louisiana Supreme Court citing 89 C.J.S., verba, Trover & Commission, s 3, explained conversion as follows:

> [t]he essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner, although a temporary deprivation will be sufficient; and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act.
>
> In order to constitute a conversion there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, as otherwise expressed, there must be a wrongful taking or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser. Conversions, it has been said, are of two classes, where possession is originally wrongful, and where possession originally rightful becomes wrongful by wrongful detention. See also *Jennings-Heywood Oil Syndicate v. Houssiere-Latreille Oil Co.*, 127 La. 971, 54 So. 318; [231 La. 669] *A.B.C. Oil Burner and Heating Co., Inc. V. Palmer*, La. App., 28 So.2d 642 (*certiorari denied)*; and *Edwards v. Max Thieme Chevrolet Co.*, La.App., 191 So. 569 (*certiorari denied*).
>
> In an action *ex delicto*, on the other hand, plaintiff's recourse is to seek judgment for the value of the property wrongfully detained or appropriated. *Bender v. Looney*, 22 La.Ann. 488; 93 So. 490; *Liles v. Producers' Oil Co.*, 155

> La. 385, [231 La. 670] 99 So. 339; *Carter-Allen Jewelry Co. V. Overstreet*, 165 La. 887, 116 So. 222; and *Kramer v. Freeman*, supra.

*Importsales, Inc. v. Lindeman*, 231 La. 663, 668, 92 So.2d 574, 576 (La. 1957).

Cluse began his suit as an action seeking a declaratory judgment that the 2003 dozer belongs to him and seeking either specific performance for the return of the 2003 dozer to his possession, or in the alternative, if it cannot be returned to him, for payment of the value of the dozer at the time of the wrongful conversion. Cluse's action alleges H&E wrongfully converted the 2003 dozer by unlawfully taking the dozer from his possession, and thereafter depriving him of its use. Cluse's action is *ex delicto*. H&E admits they took possession of the 2003 dozer from Cluse without his consent. Because they sold the 2003 dozer, specific performance is not possible. At the time of the conversion the 2003 dozer was valued at $68,000.00. We therefore award Cluse this amount for the value of the dozer at the time of the wrongful taking.

We turn now to consider Cluse's general damages claim for the wrongful conversion. We have previously held general damages for illegal seizure of property includes "embarrassment, humiliation, mental anguish, and worry." *Gulf Rice Milling v. Sonnier* 05-1432, p. 9 (La.App. 3 Cir. 5/03/06), 930 So.2d 256, 262 *writ denied* 06-1846 (La. 10/27/06), 939 So.2d 1282 and *writ denied* 06-1855(La. 10/27/06), 939 So.2d 1284. In *Gulf Rice Milling,* we upheld an award of $100,000.00 in general damages to a rice farmer for wrongful seizure of his rice and money. In that case Mr. Sonnier testified he enjoyed a good reputation in the community before this incident and testified he was concerned that this may have blemished his reputation. He was embarrassed when people asked him to explain the seizure and embarrassed at having to explain the situation to his banker. His wife testified he became quiet and withdrawn in his "own little world" after the seizure of his property.

10

Likewise, Mr. Cluse is a businessman of many years in his community and an elected official. His daughter testified he just went to work and stayed home after his property was seized. We believe a reasonable sum which would compensate Cluse for his emotional suffering, mental anguish, worry, embarrassment and humiliation as a result of the wrongful conversion is $40,000.00.

H&E filed a reconventional demand, which states that in the event the court determines there was a sale of the 2003 dozer, H&E is entitled to payment of the unpaid balance of $17,160.00 plus interest from October 9, 2006, until paid, as such rate of interest is provided in the contract at 4.75%APR. Cluse admits that no payments were made which would reduce the balance owed after he was deprived of the dozer's possession. We, therefore, find H&E is entitled to a credit for the $17,160.00 balance due plus interest at 4.5% as provided in the contract up to date payment was to be made in full, October 9, 2008, as per the contract terms.

H&E also seeks recission of the sale of the 2001 dozer to it by Cluse. H&E argues it is entitled to rescind the sale of the 2001 dozer because of the defective transmission and because of Cluse's alleged misrepresentations that the dozer was fully operational, relying on the provisions of La.Civ.Code art. 2545. Article 2545 provides, in pertinent part:

> [a] seller who knows that the thing he sells has a defect but omits to declare it, or a seller who declares that the thing has a quality that he knows it does not have, is liable to the buyer for the return of the price with interest from the time it was paid, for the reimbursement of the reasonable expenses occasioned by the sale and those incurred for the preservation of the thing, and also for damages and reasonable attorney fees.

H&E is not entitled to a rescission of the sale of the 2001 dozer. We find Cluse did not intentionally mislead it about the condition of the 2001 dozer. On the contrary, H&E admits Cluse brought the dozer to H&E for inspection and repair in

11

June 2006 at which time H&E informed Cluse it believed the dozer needed repairs to the transmission with an estimated repair cost of $26,809.99. We cannot discern from the record whether such repairs to the 2001 dozer were actually necessary or would actually have cost the amount estimated. H&E admits Cluse decided not to have such repairs made. Instead, he chose to tender the dozer for repair to the party he purchased it from in Texas, and they performed what they believed to be the needed repairs at its cost. These facts are undisputed. H&E opened their case by alleging that this case turns on business ethics and alleging that Cluse was an unethical businessman who had either overtly or by silence defrauded them as to the condition of the 2001 dozer. However this accusation is contradicted by the record before us.

H&E admits Cluse contacted their salesman, Broussard, about three months after H&E gave the estimate for repairs to the transmission, to discuss purchasing a new dozer from H&E and trading-in his 2001 dozer. In the interim Cluse sent the dozer to Motion, from whom he originally purchased it, and they performed repairs which they believed were needed to address the mechanical problem. Before making its offer to Cluse for a sale price of the 2003 dozer, and a trade-in value for Cluse's 2001 dozer, admittedly armed with prior knowledge of the transmission problem, H&E's representative inspected the dozer, drove the dozer, and noted on a written "Used Equipment Inspection Report" the transmission "slightly [hesitates] when shifted to forward." Yet, with this knowledge and prior knowledge of the transmission problem, H&E chose not to conduct a closer inspection of the transmission nor to ask Cluse for any record of the recent repairs to the transmission before making him an offer for a trade-in value of the 2001 dozer. H&E alleges Broussard was unable to "fully" inspect the dozer due to "rain" and "his lack of

12

expertise in inspecting equipment." Thus, it appears H&E not only admits it had prior knowledge of the alleged defect, but further admits its employees chose not to conduct a thorough inspection. Moreover, H&E chose to send an unqualified person to inspect the dozer and allow him to prepare and submit an offer to Cluse.

A review of Broussard's inspection report shows, however, that he conducted more than a cursory inspection of the dozer. The report detailed the condition of the dozer. Larry Levet (Levet), used equipment manager for H&E, testified he relies "strictly" on the salesman to give him information about the equipment for an appraisal. He specifically testified, "it's the salesman's obligation to get as much information as he can" and if he gets a bad inspection report from the salesman he would "put a bad appraisal on it." Given these facts, we cannot reasonably conclude that Cluse intentionally mislead H&E about the condition of the 2001 dozer or that he mislead H&E by his silence. H&E is not entitled to a recission of sale nor to a reduction in the value it agreed to give Cluse for the trade-in of the 2001 dozer.

We have elected not to address the evidence presented by Cluse as to the amount of repairs needed on the 2001 dozer left by H&E in an unusable condition on his job site in Arnaudville. We find the 2001 dozer belonged to H&E at the time it was abandoned.

Further, we find the jury committed legal error in concluding Cluse was not entitled to recovery on his defamation claim. H&E's employee, Nichols, testified he went to the Rapides Parish Sheriff's Office and filed criminal charges against Cluse for theft of the 2003 dozer. Trooper Alexander testified he spoke to Mr. Mark Baudoin, whose cousin worked for H&E, and Baudoin told Alexander that H&E accused Cluse of stealing the dozer, and Cluse was being charged with theft of the dozer. Trooper Alexander testified he contacted Andrea Cluse by telephone and

informed her H&E was looking for her dad, Pat Cluse, because he had stolen a dozer.

He further testified he then contacted Cluse and related the same information to him.

Our state supreme court has defined defamation, and has held words which

accuse a person of criminal acts are defamatory *per se* and damages are presumed.

> Defamation occurs through either libel or slander. Libel is defamation which is "expressed by print, writing, pictures, or signs", while slander is communicated by "oral expressions or transitory gestures." Black's Law Dictionary 1388 (6th ed. 1990). In *Fitzgerald v. Tucker*, 98-2313, p. 10 (La. 6/29/99), 737 So.2d 706, 715-16, the supreme court discussed the law pertaining to defamation:

> 'A cause of action for defamation arises out of a violation of Civil Code article 2315. *Vicknair v. Daily States Pub. Co.*, 153 La. 677, 96 So. 529 (1923); Ferdinand F. Stone, 12 Louisiana Civil Law Treatise Tort Doctrine Section 176©, at 227 (1977). Defamation involves the invasion of a person's interest in his or her reputation and good name. *Sassone v. Elder*, 92-1856 (La.10/18/93), 626 So.2d 345, 350 (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts Section 111 (5th ed. 1984). In order to prevail in a defamation action, a plaintiff must necessarily prove four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher and (4) resulting injury'.

*City of Natchitoches  v. Employers Reinsurance Corp., et al*, 02-147, p. 5 (La. App.

3 Cir. 6/5/02), 819 So.2d 413, 417-18.

> In Louisiana accusation of a crime is considered defamatory per se. *Redmond v. McCool*, 582 So.2d 262, 265 (La.App. 1st Cir. 1991). Generally, defamation per se creates a presumption of falsity and malice which the defendant bears the burden of rebutting. *Id.*

*Davis v. Borskey*, 92-2339, pp.5-6 (La.App. 1 Cir. 8/22/94), 643 So.2d 179,183, *writ*

*granted*, 94-2399 (La. 12/19/94), 648 So.2d 398, *judgment affirmed* 94-2399 (La.

9/5/95). 660 So.2d 17.

> Words which expressly or implicitly accuse another of criminal conduct or which, by their nature, tend to injure one's personal or professional reputation are considered defamatory per se. If the plaintiff proves publication of defamatory per se words, the elements of falsity and malice are presumed although they may be rebutted by the defendant. Injury is also presumed... Injury may include non-pecuniary or general damages such as injury to reputation, personal humiliation,

embarrassment and mental anguish even when no special damage such as a loss of income is claimed.

*Arledge v. Hendricks*, 30,588, p. 4 (La.App. 2 Cir. 6/26/98), 715 So.2d 135, 138-39, *writ denied* 98-2015 (La. 11/20/98), 728 So.2d 1287.

> Damages resulting from defamation can include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. *Rennier v. State, Through Department of Public Safety*, 428 So.2d 1261 (La. App. 3 Cir. 1983). These are separate elements of damage. *Rennier.* Defamation damages must be proved by competent evidence, but there is no need to establish the actual pecuniary value of the injury suffered. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Trahan v. Ritterman*, 368 So.2d 181 (La.App. 1ˢᵗ Cir. 1979).

*Lege v. White*, 619 So.2d 190, 191 (La.App. 3 Cir. 1993).

Nichols testified, in his capacity as a manager at H&E, he filed criminal charges against Cluse with the Rapides Parish Sheriff's Office, because he understood it was the way to get the dozer back. H&E was well aware a written transaction concerning the 2003 dozer had occurred and it had delivered the dozer to Cluse and taken his property as a trade-in. We are satisfied the record establishes H&E acted with reckless disregard for the truth and simply found it more expedient to file a criminal theft charge against Cluse thereby enlisting the help of law enforcement to seize the dozer without first initiating appropriate legal process. Because Cluse was defamed by accusations of criminal activity (defamation *per se*) the elements of malice, falsity, fault, and injury are presumed. *Costello v. Hardy*, 03-1146 (La. 1/21/04), 864 So.2d 129. Far from H&E rebutting these presumptions, the evidence demonstrates the accusation of theft was in fact false and the publication was made not only with a reckless disregard for the truth, but with the ulterior motive to enlist the help of third parties and law enforcement to seize property which H&E was not lawfully entitled to seize and remove from Cluse's possession. H&E enjoyed no

15

privileged communication in defense of its actions.

Injury is presumed in this case. Not only does H&E fail to offer any evidence to rebut that presumption, but we are persuaded by the testimony of Cluse, and more so by the testimony of his daughter, Andrea Cluse, that Cluse, in fact, suffered injury as a result of the defamation. Andrea Cluse testified she knew when she had to call her father and tell him he was being accused of stealing the 2003 dozer, and that criminal charges had been or would be made against him, it would "weigh heavily on him physically and emotionally." Cluse suffered a stroke prior to this situation. Andrea testified it was important to keep Cluse's level of stress as minimal as possible because of his stroke. She testified Cluse was embarrassed to be subjected to such accusations. She further testified prior to this episode, Cluse was well known in the community and well respected. He was shocked at such an accusation. According to her testimony, Cluse pretty much isolated himself from people after these accusations were made public and would limit his activities to just going to work and staying at home because he was embarrassed by the accusations of H&E. Cluse was a police juror at the time and, thus, obviously well known in his community. As we have noted above, general damages include injury to reputation, personal humiliation, embarrassment, and mental anguish and suffering. *See Rennier v. State, Through Department of Public Safety*, 428 So.2d 1261, 1264 (La.App. 3 Cir. 1983). *See also Lege,* 619 So.2d 190. The record supports a finding that Cluse suffered personal humiliation and embarrassment, as well as mental anguish and suffering. Understandably, it is difficult to know the exact damage caused to Cluse's reputation. As noted above, we have held, in accord with settled jurisprudence, damages for defamation "must be proved by competent evidence, but there is no need to establish the actual pecuniary value of the injury suffered. *Gertz v. Robert Welch,*

16

*Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Trahan v. Ritterman*, 368 So.2d 181 (La.App. 1ˢᵗ Cir. 1979)." *Lege,* 619 So.2d at 191. Because we decide this case *de novo,* we must determine a reasonable award of damages to adequately compensate Cluse under the circumstance.

In *McHale v. Lake Charles American Press*, 390 So.2d 556 (La.App. 3 Cir. 1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3085, 69 L.Ed. 2d 955 (1981) this court upheld an award of $150,000.00 in general damages for defamation finding the inflammatory words published in a local newspaper with a circulation of 35,000 greatly injured the attorney's professional reputation and resulted in severe humiliation and embarrassment and considerable mental distress, despite plaintiff's failure to prove any loss of income as a result of the defamatory statements.

In *Thomas v Busby*, 95-1147 (La. App. 3 Cir. 3/06/96), 670 So.2d 603, *writ granted for other reasons*, 96-0891 (La. 5/17/96), 673 So.2d 601, the trial court awarded an attorney $25,000.00 for suffering extreme embarrassment over being accused over the store intercom of stealing a bag of potting soil in a Wal Mart store.

In *Trentecosta v. Beck et al.*, 95-96 (La.App. 4 Cir. 2/25/98), 714 So.2d 721, *writ denied*, 98-1578 and 98-1585 (La.10/09/98) the fourth circuit upheld an award of $50,000.00 in general damages for *per se* defamatory statements accusing a bingo hall owner of bilking thousands of dollars from charities. Plaintiff was further awarded $94,357.50 for business losses arising out of the defamatory statements.

In *Steed v. St. Paul's United Methodist Church*, 31,521 and 31,522 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, *writ denied*, 99-877 (La. 05/07/99), 740 So.2d 1290 the court upheld an award of general damages of $90,000.00 to a Methodist minister for defamation *per se.* The jury lump sum award included an award for loss of income, damage to reputation, embarrassment and humiliation. The minister was

17

transferred to another church at a decreased salary and testimony showed he suffered a loss of reputation among his fellow ministers.

In *Connor v. Scroggs*, 35,521 (La.App. 2 Cir. 6/12/02), 821 So.2d 542 our sister court, relying in part on decisions of this court, upheld an award of $35,000.00 to each of the plaintiffs in that case who had been falsely accused of child molestation. The *Scroggs* court considered the horrendous nature of the crime falsely accused, the lengthy time it took to clear the plaintiffs' names, and the fact that the plaintiffs lived in a small community.

We note in this case defendant filed criminal charges against Cluse accusing him of theft of property valued at $68,000.00, subjecting him to prosecution for a very serious felony offense. Additionally, the defendant's own witness and management employee, Nichols, admitted H&E filed the criminal charges as a way to get the 2003 dozer back, i.e. as the most expedient means to get the dozer back from Cluse.

Although Cluse testified he does not know whether the defamatory statements about him caused Trooper Alexander or anyone else to think less of him, that testimony does not equate to an admission that there has been no damage to his reputation. Our law presumes damage has occurred. H&E has not rebutted that presumption. There is convincing, un-refuted testimony that Cluse was very embarrassed and humiliated at being accused of being a thief. When his daughter called to tell him about the accusations related to her by her childhood friend, Trooper Alexander, Cluse immediately went to find his paperwork showing he bought the dozer. Mr. Cluse is a businessman, and was a police juror at the time of these events. His daughter testified he was normally very active and normally interacted with people, but, after these accusations were made known, he just went to work and then

18

home. Obviously the defamatory statements caused Mr. Cluse much embarrassment, humiliation, anxiety, mental anguish and hurt feelings, all of which are compensable as general damages for defamation. We note, too, Andrea Cluse's testimony that Cluse suffered a stroke prior to these events, and it was important for his health to avoid stress and anxiety. Considering these factors, we believe a reasonable sum which would compensate Mr. Cluse for the general damages suffered as a result of the defendant's defamatory statements is $25,000.00.

## CONCLUSION

For the reasons stated above we reverse the trial court's findings and hold there was a completed sale of the 2003 dozer to Cluse, and we further maintain Cluse's claim for wrongful conversion of his property. We reverse the jury's finding on the defamation claim, and hold, as well, that Cluse has established a claim for defamation against H&E. We render judgment accordingly. We further find H&E is entitled to recover the unpaid balance with interest on the purchase price of the 2003 dozer up to October 9, 2008.

**REVERSED AND RENDERED. JUDGMENT RENDERED IN FAVOR OF JAMES PATRICK CLUSE IN THE AMOUNT OF $68,000.00 IN SPECIAL DAMAGES, PLUS COURT COSTS AND JUDICIAL INTEREST THEREON FROM DATE OF DEMAND, FOR HIS PROPERTY WRONGFULLY SEIZED BY H&E. JUDGMENT IS RENDERED IN FAVOR OF JAMES PATRICK CLUSE IN THE AMOUNT OF $40,000.00 IN GENERAL DAMAGES, PLUS COURT COSTS AND JUDICIAL INTEREST THEREON FROM DATE OF DEMAND ON THE CLAIM OF CONVERSION OF PROPERTY. JUDGMENT IS RENDERED IN FAVOR OF JAMES PATRICK CLUSE IN THE AMOUNT OF $25,000.00 IN GENERAL DAMAGES, PLUS COURT COSTS AND JUDICIAL INTEREST THEREON FROM DATE OF DEMAND ON THE CLAIM OF DEFAMATION. JUDGMENT IS RENDERED IN FAVOR OF H&E EQUIPMENT SERVICES, INC. IN THE AMOUNT OF $17,160.00 PLUS INTEREST AT THE RATE OF 4.75% UP TO OCTOBER 9, 2008, THIS AMOUNT SHALL BE CREDITED AGAINST ALL SUMS DUE TO BE PAID HEREUNDER TO JAMES PATRICK CLUSE. H&E IS ORDERED TO REMOVE THEIR 2001 DOZER FROM CLUSE'S PROPERTY WITHIN 30 DAYS FROM FINALITY OF THIS JUDGMENT.**

JAMES PATRICK CLUSE D/B/A J. P. CLUSE CONSTRUCTION

VERSUS

H&E EQUIPMENT SERVICES, INC.

**GREMILLION, Judge, dissents.**

Before the majority had reached the end of the first paragraph of its analysis, it had already determined that the jury had erred, and consequently, it completely disregarded all of the jury's hard work and conclusions. However, the lawfully empaneled and properly charged jury actually had the authority and the facts to find as it did. I, therefore, respectfully dissent.

The jury found, as a matter of *fact*, that there had been no sale of the tractor at issue. This circuit has long recognized that a factfinder's determination that no sale took place is a finding of fact. *Travis v. Hudnell*, 517 So.2d 1085 (La.App. 3 Cir. 1987). It is equally as clear that an appellate court may not disturb such a finding unless the record furnishes no reasonable factual basis for the finding or the finding was clearly wrong. *Id.* In this case, the jury's finding of fact was not clearly wrong, as it was supported by the record. The jury had a reasonable factual basis for its finding. The jury heard the defendant maintain that the delivery of the dozer at issue was in the nature of a test drive, and that the contract for sale was never approved by the appropriate manager. It heard testimony that the contract specifically provided that all sales were subject to final approval. The jury also saw the relevant documentation.

The jury reviewed the sales order form in question, requiring that "ALL ORDERS [be] SUBJECT TO APPROVAL." The jury saw a signature line on the

1

form in question labeled "Branch Manager Approval." Most importantly of all, the jury witnessed that the signature line was blank. To suggest that this evidence was not enough to provide the jury with a reasonable basis for its conclusion is to improperly invade the jury's province.

The majority properly points out that the sale of a tractor is complete when price, thing, and consent come together. La.Civ.Code art. 2439. Consequently, no other formalities are required. La.Civ.Code art. 1927. However, the fact that no other formalities are required does not mean that other formalities are not allowed, and cannot be contemplated by the parties. In this case, the jury clearly concluded that additional formalities were contemplated by the parties. Again, namely, the proper signature by the proper manager on the proper form.

The question before us is one of proof of consent. When the parties contemplate a certain form, it is presumed that they do not intend to be bound until the contract is executed in that form. La.Civ.Code art. 1947. Civil Code articles 1927 and 1947, it should be noted, are found in Civil Code Book III, Title IV, Chapter 3, which is entitled, "Consent." Here, the jury had a reasonable basis to conclude that without approval, there was no consent.

Ultimately, what the majority has given the force of law is its opinion that neither the defendant nor the jury had the right to insist that the contract at issue be completed, by the affixing of all necessary signatures, before the sale was perfected. With all due respect, the law differs from the majority's opinion. As a general matter, parties may contemplate specific written formalities. La.Civ.Code art. 1947. More specifically, when the parties contemplate being bound only by a signed contract, there is no contractual relationship in the absence of the necessary signatures. *Baldwin v. Bass*, 28,984 (La.App. 2 Cir. 12/11/96), 685 So.2d 436, *writ denied*, 97-

2

111 (La. 3/7/97), 690 So.2d 20 . Additionally, the parties to a sale may make that sale contingent on approval. La.Civ.Code art. 2460.

There was certainly evidence presented that would have allowed the jury to conclude that the parties did not contemplate the final signature of the branch manager. Had it accepted as true the evidence attesting to those facts, the absence of that final signature would have been irrelevant, and the plaintiff would have prevailed. However, that is not what the jury concluded, and that is not the standard that the majority should have applied. Rather, the jury had plenty of evidence at its disposal to allow it to reach the reasonable conclusion that the parties contemplated being bound only by a fully signed written contract. Accordingly, I would affirm the jury's findings.